UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BRADY SKINNER., et al., | ) | CASE NO. 3:08 CV 0011 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE WALTER HERBERT RICE |
| | ) | |
| vs. | ) | |
| | ) | |
| THE NEW YORK TIMES COMPANY., et al., | ) | **MOTION TO DISMISS** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

     Defendants The New York Times Company and Michael Braga hereby move this Court pursuant to Rules 12(b)(2) and 12 (b)(6) of the Federal Rules of Civil Procedure to dismiss this case on the grounds that (1) the Court lacks personal jurisdiction over the defendants, and (2) defendants have failed to state a claim upon which relief can be granted.  A Brief in Support and the Affidavits of Michael Braga and Walter Garris are being submitted herewith and are incorporated herein.

/s/ *Sherri B. Lazear*
SHERRI B. LAZEAR (0030546)
BAKER & HOSTETLER, LLP
Capitol Square – Suite 2100
65 East State Street
Columbus, Ohio 43215-4260
Telephone: (614) 462-2631
Facsimile: (614) 462-2616
slazear@bakerlaw.com

*Trial Attorney for Defendants*

LOUIS A. COLOMBO (0025711)
MELISSA A. DEGAETANO (0080567)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
(216) 621-0200
Facsimile: (216) 696-0740

*Co-Counsel for defendants*

**CERTIFICATE OF SERVICE**

A copy of the foregoing was served via the court's CM/ECF system on all registered

parties on February 12, 2008.


_/s/ *Sherri B. Lazear*___
Sherri B. Lazear

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BRADY SKINNER., et al., | ) | CASE NO. 3:08 CV 0011 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE WALTER HERBERT RICE |
| | ) | |
| vs. | ) | |
| | ) | |
| THE NEW YORK TIMES  COMPANY., et al., | ) | **BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PRELIMINARY STATEMENT

Plaintiffs brought this suit in Ohio against a Florida newspaper and a Florida resident, about an article published in the Sarasota Herald-Tribune and circulated in Florida, concerning real estate transactions that took place in Florida.  Neither defendant has sufficient minimum contacts with the state of Ohio to support personal jurisdiction, and the court should dismiss this case pursuant to Rule 12(b)(2).

Furthermore, the December 18, 2006 article at issue ("Article") on its face is not defamatory, and this case should also be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  The Article recounts the activities of a Florida woman named Kelly Abercrombie, who pleaded guilty to conspiracy to commit wire fraud, and her business associate, Todd Kolbe, who was sentenced to 30 months in prison for his involvement in the fraud.  The Article explains how

Abercrombie and Kolbe caused a mortgage lender to lose $1.8 million through fraudulent real estate transactions.  It also discusses other "questionable property transfers" that Abercrombie and Kolbe engaged in involving Florida real estate.  The only reference to plaintiffs in the Article is to their involvement in these other real estate transactions of Abercrombie and Kolbe. Plaintiffs are listed as "Key Players" in a box that accompanies the Article. The Article makes clear that plaintiffs were not involved in the criminal prosecutions, but that they were involved in other transactions in which, as a matter of  public record, they bought and re-sold parcels of property to Abercrombie and Kolbe on repeated occasions.  Contrary to the allegations in the Amended Complaint, there is no accusation – or even implication – that plaintiffs were accused of committing a crime, of being charged with a crime, investigated for a crime, or that they had done anything whatsoever illegal.  Accordingly, this case can be dismissed on the merits because plaintiffs cannot demonstrate defamatory meaning, an essential element of their claim.

## STATEMENT OF FACTS

### A.    The Parties.

Plaintiffs Brady Skinner ("Skinner") and Wesley Luburgh ("Luburgh") are residents of Springboro and Dayton, Ohio, respectively.  First Amended Complaint, caption.  ("Am. Comp.").  They claim to conduct business in Montgomery County.  (Am. Comp. ¶1.)

The named defendants are Michael Braga ("Braga"), the reporter who authored the Article, and the New York Times Company, which plaintiffs erroneously identify as the publisher of the Article that appeared in the Sarasota Herald-Tribune.  (Am. Comp. ¶2.)[1]  In fact,

---

[1] The Amended Complaint's allegations are somewhat confusing, but plaintiffs identify only one corporation, The New York Times Company, while referring also to The Herald-Tribune Media Group, which is the dba for NYT Management Services, Inc.  In any event, the proper corporate defendant is identified herein, as is its relation to The New York Times Company.  (*See* Garris Aff. ¶¶ 12-14.)

the Sarasota Herald-Tribune is published by NYT Management Services, Inc. ("NYT Mgt."), a Delaware corporation located at 2202 North West Shore Boulevard, Suite 370, Tampa, Florida 33607.  See Affidavit of Walter Garris ("Garris Aff."), ¶¶ 12-15, a copy of which is attached as Exhibit A.  Michael Braga is a resident of Florida.  See Affidavit of Michael Braga ("Braga Aff."), ¶ 2, a copy of which is attached hereto as Exhibit B.

Michael Braga has never been a resident of Ohio, has never worked in Ohio, and has never conducted any business in Ohio.  (Braga Aff. ¶¶ 3-5.)  Braga prepared and wrote the Article in Florida.  (*Id*. at ¶ 7.)  In preparing the Article, he did not visit Ohio, and all of his substantive interviews or contacts made in connection with the Article were done with individuals in the state of Florida.  (*Id*. at ¶¶ 7-8.)

In the interest of fairness and completeness, Braga attempted to contact both plaintiffs by calling their phone numbers in Ohio, but he was unable to reach them.  (*Id*. at ¶ 9.)  Braga left detailed messages for both Brady Skinner and Wesley Luburgh on 10/3/2006 and 10/12/2006 respectively and asked them to return his calls.  (*Id*.)  Neither Skinner nor Luburgh returned his calls,[2] and Braga never had a conversation with anyone in Ohio concerning the Article.  (*Id.* at 10.)

The Sarasota Herald-Tribune is a daily Florida newspaper that circulates primarily in Sarasota County, Florida, with some limited content also published on its website.  (Garris Aff. ¶ 4.)  The purpose of the Sarasota Herald-Tribune's website is to serve as an information center for local Sarasota residents.  (*Id.* at ¶ 6.)  It was not created for the purpose of conducting

---

[2] Plaintiffs through their counsel first complained that they were never contacted by defendants.  (*See* Am. Comp., Ex. 2.)  That claim was rebutted by phone records that proved defendant Braga in fact called each plaintiff.  (*See* Am. Comp., Ex. 3.)

business with Ohio or its residents.  (*Id.*)  The computer server used by the paper to publish content on the Internet is located in Virginia.  (*Id.* at ¶ 5.)

The Sarasota Herald-Tribune does not employ anyone from Ohio, and none of the newspaper's reporters or staff members live in Ohio.  (*Id.* at ¶ 7.)  The paper does not solicit subscriptions to its newspaper in Ohio or anywhere else outside of Florida.  (*Id.* at ¶ 8.)  Rather, it solicits subscriptions via local phone and local direct mail to readers in the Sarasota area.  (*Id.*)  An Ohio resident wishing to obtain a subscription to the Sarasota Herald-Tribune would have to call or write the Sarasota Herald-Tribune's office in Florida.  (*Id.* at ¶ 10.)  Out of over 108,000 subscribers, only four Ohio residents have daily subscriptions (the Article appeared on a weekday), and plaintiffs have made no allegations and offered no evidence that any of those four people actually received that paper or read the Article.  (*Id.* at ¶9; Am. Comp.)

The publisher of the Sarasota Herald-Tribune, NYT Mgt., does not solicit any business in Ohio.  (Garris Aff. ¶ 16.)  It does not own and has never owned assets in Ohio.  Nor has it owned, leased, or rented any real or personal property in Ohio.  (*Id.*)  It has never paid taxes in Ohio, and other than this lawsuit, it has never been accused of committing any tort or wrong in Ohio.  (*Id.*)  Finally, NYT Mgt. does not drive any substantial revenue from goods used or services rendered in Ohio. (*Id.* at ¶ 17.)

**B.**      **The Article.**

The Article, which is attached to plaintiffs' First Amended Complaint, [3] was published on Monday, December 18, 2006.  (*Id.* at ¶ 15.)  It was delivered to approximately 108,000 subscribers, only four of whom are Ohio residents.  (*Id.* at ¶ 9.)  It was written in Florida,

---

[3] Because plaintiffs attached such a poor photocopy of the Article to their Amended Complaint, a legible version has been attached hereto as Exhibit C.

focusing on convictions stemming from fraudulent real estate transactions conducted by two Floridians, and was aimed at a Florida audience.  (Braga Aff. ¶¶ 6-7.)

The Article principally discusses Kelly Abercrombie's involvement in a mortgage fraud scheme that took place primarily in Manatee County, Florida.  (*Id.*)  The headline reads:  "A Puppet Or A Partner?  Kelly Abercrombie faces prison for role in mortgage fraud."  The Article also mentions that Abercrombie was involved in other questionable property transfers.  (Ex. C hereto.)  The Article clearly distinguishes between the "fraudulent real estate transactions," for which Abercrombie was indicted, and the "questionable property transfers," which were not crimes.  (*Id.*)  Plaintiffs are mentioned only in the discussion of Abercrombie's "questionable property transfers" as persons who frequently sold and bought real estate to and from Abercrombie and her business associate, Todd Kolbe.  (*Id.*)

In the side box titled "Key Players," which appears to be the gravamen of plaintiffs' complaint about the Article,[4] Skinner and Luburgh are described simply and accurately as businessmen who "participated in real estate deals with the Kolbes and Kelly Abercrombie." (Ex. C hereto.)

---

[4] See Exhibit 2 to plaintiff's First Amended Complaint.

## ARGUMENT

I.  **THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS.**

A.  **Plaintiffs Have Failed To Allege Any Basis For Asserting Jurisdiction Over Defendants, And The Evidence Establishes That Defendants Do Not Have Sufficient Contacts With Ohio To Support Jurisdiction.**

Plaintiffs' claims should be dismissed because this court lacks personal jurisdiction over the defendants.[5]  Ohio courts may exercise personal jurisdiction over a nonresident defendant only where (1) the defendant's activities fall within the provisions of the long-arm statute, Ohio Rev. Code Ann. § 2307.382, and (2) the exercise of jurisdiction comports with the requirements of due process.  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.), cert. denied, 115 S.Ct. 423 (1994)).

Plaintiffs bear the burden of establishing that the court has jurisdiction over each defendant.  *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 328 (6th Cir. 1993); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988).  To meet this burden, plaintiffs must present evidence demonstrating the existence of jurisdiction when that jurisdiction is challenged. Resting on the allegations in their complaint is not enough; once the defendant submits an affidavit that contradicts those allegations, the court is to disregard the allegations in conducting its jurisdictional inquiry.  *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Plaintiffs cannot meet their burden of establishing jurisdiction over Braga or NYT Mgt. because neither has even minimum contacts with the State of Ohio.

---

[5] In order to expedite this matter, defendants will address the jurisdictional issue with respect to the proper corporate defendant, NYT Management Services, Inc., the publisher of the Sarasota Herald-Tribune, as well as the improperly named defendant The New York Times Company, which is the parent corporation of NYT Capital, Inc. (a Delaware corporation), which is the parent corporation of NYT Management Services, Inc. (Garris Aff., ¶¶ 12-14.)

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a state may exercise personal jurisdiction over a non-resident only when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The contacts with the forum state must be extensive enough that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Due Process requires that the defendant "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Youn v. Track, Inc*., 324 F.3d 409, 417 (6th Cir., 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted)). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Youn*, 324 F.3d at 417.

Ohio applies an even stricter standard to long-arm jurisdiction. In *Bird v. Parsons*, 289 F.3d 865, 871-872 (6th Cir. 2002), the Sixth Circuit wrote:

> We have recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 638 N.E.2d 541, 545 n. 1 (1994) (per curiam)). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." Id. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

In the case at bar, Braga does not have any contacts whatsoever with Ohio. Braga is a resident of Florida. He has never conducted any business in Ohio. Moreover, Braga has never (1) been a resident of Ohio; (2) been a member of, or employed by, any organization or business located in Ohio; (3) had an office, bank account, mailing address or telephone number in Ohio; (4) solicited any business in Ohio; (5) owned any assets in Ohio or owned, leased or rented any real or personal property in Ohio; (6) paid taxes in Ohio; (7) been accused of committing any tort or wrong in Ohio; or (8) distributed copies of any newspaper, including the Sarasota Herald-Tribune, in Ohio. (Braga Aff. ¶¶ 3-5.) Braga was in Florida the entire time he researched and wrote the Article. (*Id.* at ¶ 7.) While Braga did attempt to contact both Skinner and Luburgh about the Article in order to obtain their input, his calls to plaintiffs were not returned, so he never even had a conversation with anyone in Ohio concerning the Article. (*Id.* at ¶¶ 9-10.)

Likewise, publisher NYT Mgt. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Tampa, Florida.[6] (*See* Garris Aff. ¶¶ 12-13.) NYT Mgt. does not regularly do or solicit business in Ohio or engage in any other persistent course of conduct in Ohio. (*Id.* at ¶¶ 16-17.) It does not derive any substantial revenue from goods used or services rendered in Ohio, and it has never (1) owned any assets in Ohio; (2) owned, leased or rented any real or personal property in Ohio; or (3) paid taxes in Ohio. (*Id..*)

Finally, a parent corporation cannot be subjected to personal jurisdiction simply by reason of the activities of its wholly owned subsidiary. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) (concluding that a corporation could not be subject to jurisdiction in a

---

[6] In addition to the Sarasota Herald-Tribune, NYT Mgt. operates the Ocala Star-Banner and the Gainesville Sun in Florida, as well as two local California papers.

state merely based on the presence of its subsidiary there); *see also Schwartz v. Electronic Data Systems, Inc.*, 913 F.2d 279, 282-283 (6th Cir., 1990) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*).  The New York Times Company and each of its subsidiaries are distinct and separate corporate entities.  Thus, even if NYT Mgt. had minimum contacts with Ohio, those contacts by *a subsidiary of a subsidiary* of The New York Times Company (*see* Garris Aff. ¶ 12-14 and fn. 4 *supra*) would not give rise to jurisdiction over The New York Times Company itself.

    **B.**    **Plaintiffs Cannot Establish Specific Jurisdiction On The Basis Of Internet Publication.**

In considering the sufficiency of any contacts, courts distinguish between "general" and "specific" jurisdiction.  *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994).  Under general jurisdiction, a state may exercise personal jurisdiction over a party even if the action is unrelated to that party's contacts with the state, but only if that party's contacts are "continuous and systematic."  *Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989).  Absent "continuous and systematic" contacts, a court may exercise specific jurisdiction over a party only if the party has "sufficient minimum contacts" with the forum and the lawsuit arose out of or is related to those contacts.  *Reynolds*, at 1119 (citing *Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  Here neither general nor specific jurisdiction exists.

Plaintiffs allege that defendants' statements were published "on the Sarasota Herald-Tribune and/or Herald-Tribune Media Group's web site," and were thus "published and disseminated to the public in Montgomery County, Ohio and elsewhere." (Am. Comp., ¶5.)  Plaintiffs do not claim that general jurisdiction exists in Ohio.  Instead, they appear to be

claiming that Braga and NYT Mgt. are subject to specific personal jurisdiction in Ohio because of Internet publication of the Article.

The Sixth Circuit addressed this very issue in *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110 (6th Cir. 1994), and rejected plaintiffs' argument. In *Reynolds*, a world-class sprinter tested positive for a prohibited steroid after participating in an international track meet in Monte Carlo. The London-based International Amateur Athletic Federation (IAAF) was advised of the positive test, which was performed in Paris, and issued a press release reporting of the test result and Reynolds' two year suspension from competition. After exhausting his administrative remedies before the IAAF, Reynolds, an Ohio resident, brought suit against the IAAF in the Southern District of Ohio for breach of contract, breach of contractual due process, defamation, and tortious interference with business relations. The IAAF did not appear in the case, and default judgment was entered in Reynolds' favor.

The Sixth Circuit reversed, finding that the district court lacked personal jurisdiction over the IAAF. The court initially observed that personal jurisdiction can be either general or specific. *Id.* at 1116. Since Reynolds (like plaintiffs in this case) did not claim general jurisdiction was present, the court turned its attention to specific jurisdiction, and specifically to the question of "whether the IAAF, in making the alleged defamatory statements in England, had minimum contacts in Ohio." *Id.* at 1119. The court observed that "minimum contacts can only be formed by 'an action of the defendant purposefully directed toward the forum state.'" *Id.* (quoting *Asahi Metal Indust. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)).

To determine whether defendants took action "purposefully directed" towards Ohio, the court began by examining the leading case on the issue, *Calder v. Jones*, 465 U.S. 783 (1984):

> In *Calder*, a professional entertainer sued the writers and editors of a
> Florida magazine for libel in a California court. In concluding that the

California court had personal jurisdiction, the Supreme Court reasoned that

> the alleged libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm . . . was suffered in California. In sum, California is the focal point of both the story and the harm suffered.

> *Id.* at 788-89. Because the defendants' intentional actions were aimed at California and the brunt of the harm was felt there, the court concluded that the defendants could reasonably anticipate being haled into court in California. *Id.* at 789.

*Reynolds*, 23 F.3d at 1119-20.

The court then contrasted the facts of *Calder* with those of the case before it:

> We find *Calder* distinguishable for several reasons. First, the press release concerned Reynolds' activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not publish or circulate the report in Ohio; Ohio periodicals disseminated the report. Fifth, Ohio was not the "focal point" of the press release. The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction. *World-Wide Volkswagen Corp.*, 444 U.S. at 295. Finally, although Reynolds lost Ohio corporate endorsement contracts and appearance fees in Ohio, there is no evidence that the IAAF knew of the contracts or their Ohio origin.

*Id.* at 1120. The Sixth Circuit also discounted the fact of Reynolds' residency: "Reynolds' Ohio residence is merely fortuitous and 'unilateral activity of [the plaintiff] is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction'" *Id.* at 1118-19 (citing *Helicopteros*, 466 U.S. at 417). Given these facts, the court concluded that the IAAF had insufficient contacts with Ohio to allow personal jurisdiction. *Id.*

The Sixth Circuit had occasion to revisit and reaffirm its *Reynolds* decision in the more recently decided *Cadle Co. v. Schlichtmann*, No. 04-3145, 2005 U.S. App. LEXIS 2097 (6th Cir. Feb. 8, 2005).[7]  In *Cadle*, an Ohio based debt collection company sued a Massachusetts attorney and his firm for making allegedly defamatory statements about Cadle's activities in Massachusetts *on a website* created by Schlichtmann, in an online business journal, and to a local television station in Youngstown, Ohio.  The trial court dismissed the action for lack of personal jurisdiction.

The Sixth Circuit affirmed, relying largely on its *Reynolds* decision.  As in *Reynolds*, the court found the defendants had insufficient contacts with Ohio for the plaintiff to maintain suit here even though the website containing the allegedly defamatory statements could be accessed by Ohio residents.  "Just as in *Reynolds*, while the 'content' of the publication [on Schlichtmann's website] was about an Ohio resident, it *did not concern that resident's Ohio activities*.  Furthermore, *nothing on the website specifically targets or is even directed at Ohio readers*, as opposed to the residents of other states."  *Id.* at *12 (emphasis added).  The court reached the same conclusion regarding the allegedly defamatory statements Schlichtmann made to the on-line business journal.  *Id.* at *14.

In concluding that Schlichtmann's activities on his website did not give rise to personal jurisdiction, the court explained "[B]ecause the website was not directed toward Ohio in its content or in its target audience, the case is closer to *Revell*[8] and *Reynolds* than *Calder*."  *Id.* at *13-14 (footnote added).

---

[7] A copy of this unpublished decision is attached hereto as Exhibit D.

[8] In *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002), a resident of Texas sued the board of trustees of a New York university and a Massachusetts resident in federal district court in Texas as a result of an allegedly libelous article, written by Lidov and *posted on a website* maintained by the university, concerning Revell's activities while serving as the Associate Deputy Director of the FBI in Washington, D.C.  The district court held that it lacked

(continue)

This case easily fits within the holdings in *Reynolds* and *Cadle*. The allegedly defamatory statements concerned plaintiffs' activities in Florida, not Ohio. The Article grew out of transactions in Florida, not Ohio. The Article was circulated in Florida, not Ohio. The focal point of the Article was Florida, not Ohio. Plaintiffs demanded a retraction "particularly in [defendant's] Sarasota edition," reflecting their concern with alleged injury in Florida, not Ohio.[9]

Moreover, the Southern District has unequivocally held that the mere accessibility of an internet publication in a forum state is not enough to confer jurisdiction. In *Oasis Corp. v. Judd*, 132 F. Supp. 2d 612 (S.D. Ohio 2001), the court declined to exercise jurisdiction over Oklahoma-based defendants on the ground that their website was not directed toward an Ohio audience and had no inherent connection to Ohio. The court found significant that "the computers hosting Defendants' site are not located in Ohio," and "the site is not directed toward an Ohio audience." *Id.* at 623. The court further stated: "no federal court has ever upheld personal jurisdiction solely on the ground that the defendant's Web site happened to be accessible from the forum state; this Court shall not be the first." *Id.*

Other courts are in accord. *See, e.g., Young v. New Haven Advocate*, 315 F.3d 256, 262-63 (4th Cir. 2002), *cert. denied*, 538 U.S. 1035 (2002) ("application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or

---

(continued)

    personal jurisdiction over the defendants, and dismissed the action. In affirming, the Fifth Circuit reasoned:

> First, the article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder*, in which the article contained descriptions of the California activities of the plaintiff, drew upon California sources, and found its largest audience in California . . . [T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*.

*Id.* at 473 (footnotes omitted.)

[9] (See Am. Comp., Ex. 2.)

directed to the forum state"); *Bailey v. Turbine Design, Inc.*, 86 F. Supp. 2d 790 (W.D. Tenn. 2000) (although foreseeable that plaintiff could suffer harm in his home state, there was no evidence that defendants had deliberately or knowingly targeted the forum state); *Schnapp v. McBride*, 64 F. Supp. 2d 608 (E.D. La. 1998) (granting defendant newspaper's motion to dismiss for lack of jurisdiction because the publication's web site was used only for posting information and limited advertising outside the forum state and the newspaper delivered only a miniscule number of subscriptions to forum state residents).

The foregoing authorities make clear that there is no basis for an Ohio court to assert jurisdiction over defendants in this case, and it should be dismissed.

## II.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT NONE OF THE STATEMENTS MADE ABOUT PLAINTIFFS IN THE ARTICLE ARE DEFAMATORY.

A Rule 12(b)(6) motion is properly granted when there is no set of facts which would allow the plaintiff to recover. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "[M]atters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may . . . be taken into account" when considering a 12(b)(6) motion. *Harris v. Muchnicki*, 932 F. Supp. 192, 194 (N.D. Ohio 1996), *aff'd without opinion*, 101 F.3d 702 (6th Cir. 1996). Although the court must construe the complaint in a light most favorable to the plaintiff, the court is not required to accept as true "legal conclusions or unwarranted factual inferences." *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002); *Blakely v. United States*, 276 F.3d 853 (6th Cir. 2002).

### A.   <u>A Statement Is Not Actionable Unless It Is Defamatory In Meaning</u>.

Not every statement that a plaintiff disagrees with or finds unpleasant or embarrassing is defamatory in meaning. For a statement to be defamatory in meaning under Ohio law, the words "must be of such a nature that courts can presume as a matter of law that they tend to degrade or

disgrace the person of whom they are written or spoken, or hold him up to public hatred, contempt or scorn." *Conway v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers*, 209 F. Supp. 2d 731, 755 (N.D. Ohio 2002) (citing *Moore v. P.W. Publ'g Co.*, 3 Ohio St. 2d 183, 188 (1965), *cert. denied*, 382 U.S. 978 (1966)).

Whether a statement meets this test can be decided on a Rule 12(b)(6) motion because "[w]hether or not a statement is defamatory in meaning is an issue of law for the court." *Ferreri v. Plain Dealer Publ'g Co.*, 142 Ohio App. 3d. 629, 641 (Ct. App. 2001) (citing *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 372 (1983)); *Stow v. Coville*, 96 Ohio App. 3d 70, 74 (Ct. App. 1994); *Mendise v. Plain Dealer Publ'g Co.*, 69 Ohio App. 3d 721, 726 (Ct. App. 1990).

**B.** **Ohio's Innocent Construction Rule Requires That Allegedly Defamatory Statements Be Given A Non-Defamatory Meaning Whenever Possible.**

Moreover, in determining whether any of the statements in the Article are actionable, this court must apply Ohio's innocent construction rule. That rule requires that allegedly defamatory statements be given the most innocent, i.e., nonactionable, meaning that is reasonable. *Yeager*, 6 Ohio St. 3d at 372 ("if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted"). *See also, Conway*, 209 F. Supp. 2d at 759 (applying innocent construction rule and holding that the allegedly defamatory statements were not actionable where it was not obvious that plaintiff was the target of the defendant's charge of corruption).

**C.** **Headlines Must Be Read In The Context Of The Entire Article.**

Under Ohio law, newspaper headlines must be construed together with the ensuing Article. *Painter v. E.W. Scripps Co.,* 104 Ohio App. 237 (1957) (syllabus 1); see also, *Mendise*, 69 Ohio App. 3d at 726, (citing *Schallenberger v. Scripps Publ'g Co.*, 20 Ohio Dec. 651 (1909), *aff'd*, 85 Ohio St. 492, 98 N.E. 1132 (1912)). Thus, a headline that a man had been "arrested"

was not libelous when the Article itself made clear that only an arrest warrant had been issued. *Painter,* 104 Ohio App. 237, 241. Similarly, a newspaper headline that read: "Show and tell lands father in jail on drug charges," was not defamatory when the Article explained that the father faced a misdemeanor charge, and if convicted would only have to pay an $81 fine. In that case, this court held that even though the headline was false, the Article was not defamatory as a matter of law because it was clear in the context of reading the entire Article that Crall was not in jail. *Crall v. Gannett Satellite Information Network, Inc.*, No. C-2-92-233, 1992 U.S. Dist. LEXIS 20386, at 10-12 (S.D. Ohio 1992).[10]

> **D.** **Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted Because None Of The Statements Contained In The Article Are Defamatory As To Them.**

It appears from the plaintiffs' Amended Complaint that the use of the phrase "Key Players," located at the top of a box containing the names of the people involved in the real estate transactions discussed in the Article, including plaintiffs, is what they consider defamatory. (*See*, Am. Comp. ¶5; Am. Comp., Ex. 2 (implicitly conceding that plaintiffs did buy and sell units at the Villa LeGrand Development in Venice causing the price to increase 30% between 1999 and 2001, and complaining instead of "Mr. Braga's thoughtless and cavalier characterization of [plaintiffs] as 'key players.'"))

The statement at issue, read in the context of the entire Article and Ohio's innocent construction rule, is not defamatory. The Article at issue focuses on Kelly Abercrombie and her business associate, Todd Kolbe. (*See* Ex. C hereto.) While it does discuss Abercrombie and Kolbe's criminal activities, it never suggests that plaintiffs were complicit in those activities, were being investigated by the authorities in connection with those activities, or had ever been

---

[10] A copy of this unpublished decision is attached hereto as Exhibit E.

charged with any crime.  (*See* Ex. C hereto.)  The Article begins by describing Abercrombie and discussing the actions she took with Kolbe that resulted in criminal charges.  The Article then transitions to discuss other "questionable property transfers" that Abercrombie was involved in that were *in addition to* and thus not among the "30 fraudulent real estate transactions" earlier discussed in the Article.

It is in this section, describing the other real estate transfers that were *not* subject to prosecution, where plaintiffs are briefly mentioned.  Neither they nor Abercrombie or Kolbe are accused of a crime with respect to these deals.  Rather, the Article simply reports that on multiple occasions plaintiffs bought and sold the same real estate from Abercrombie and members of Kolbe's family.  It is not defamatory to say someone bought and sold property.  It is also not defamatory to say someone bought and sold the same property several times.  Nor is it defamatory to describe people who were repeatedly involved in sales of property back and forth as "key players" in the real estate transactions described.  *See Ferreri*, 142 Ohio App. 3d at 642 (to say judge was at "center" of disputes in Juvenile Court which had locked the court into "internal strife and bickering" is not defamatory of plaintiff.)  That is even more true where the term "Key Players" was merely used as a rubric or headline for a box accompanying the Article – and where the text inside the box was indisputably true.  While plaintiffs presumably want to argue that some darker meaning attaches to these facts, the innocent construction rule precludes that interpretation.

## **CONCLUSION**

For the reasons discussed above, this action should be dismissed pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

_/s/ Sherri B. Lazear_
SHERRI B. LAZEAR (0030546)
BAKER & HOSTETLER, LLP
Capitol Square – Suite 2100
65 East State Street
Columbus, Ohio 43215-4260
Telephone: (614) 462-2631
Facsimile: (614) 462-2616
slazear@bakerlaw.com
_Trial Attorney for defendants_

LOUIS A. COLOMBO (0025711)
MELISSA A. DEGAETANO (0080567)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
_Co-Counsel for defendants_

## CERTIFICATE OF SERVICE

A copy of the foregoing was served via the court's CM/ECF system on all registered parties on February 12, 2008.

_/s/ Sherri B. Lazear_
Sherri B. Lazear