**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DENNIS NOLAND,                CASE NO. 2:05-cv-682
                                     JUDGE WATSON
       Petitioner,                 MAGISTRATE JUDGE ABEL

v.

PAT HURLEY, Warden,

       Respondent.

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The sole claim remaining for this Court's review is petitioner's assertion that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). Respondent contends that this claim is procedurally defaulted. Because the ineffective assistance of counsel may constitute cause for a procedural default, and because such claim had never been presented to the state courts, on May 26, 2006, proceedings were stayed pending petitioner's exhaustion of his ineffective assistance of counsel claim. On November 9, 2006, upon petitioner's notification of exhaustion, proceedings were reactivated. On November 22, 2006, respondent filed a supplemental return of writ. It remains the position of the respondent that petitioner's *Blakely* claim is procedurally defaulted. Respondent also contends that any *Blakely* error constituted harmless error. Doc. No. 21.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED**, and that petitioner's sentence be **VACATED** and petitioner released from incarceration unless the State of Ohio releases him within ninety days.

### I. FACTS

This case involves the following facts, as summarized by the Fourth District Court of Appeals:

In November 1997, Tamara Noland discovered that her daughter, Polli Metcalf, was pregnant. Ms. Metcalf, who was twenty-two years old at the time, has the mental capacity of a three and a half year old child. Ms. Metcalf had an abortion and tissue from the fetus was preserved for investigative purposes. After learning her daughter was pregnant, Mrs. Noland contacted the Washington County Sheriff's Office to report that her daughter had been sexually abused. For two years, Detective Schuck attempted to identify the person who had sexually abused Ms. Metcalf. Eventually, Detective Schuck identified Noland, Ms. Metcalf's stepfather, as a suspect based on a call he received from Ms. Metcalf's caregiver. The caregiver indicated that she and Ms. Metcalf were at a movie that contained a passionate scene. The caregiver asked Ms. Metcalf if anybody had ever embraced her or kissed her like that, to which Ms. Metcalf replied "Dad." When the caregiver asked who "Dad" was, Ms. Metcalf identified Noland. Based on that information, Detective Schuck obtained a search warrant for a sample of Noland's DNA. Detective Schuck sent Noland's DNA sample to the laboratory so that it could be compared with the DNA from the fetal tissue. The results indicated that Noland fathered Ms. Metcalf's child. Detective Schuck then interviewed Noland. Initially, Noland denied having sexual intercourse with Ms. Metcalf. Later, he admitted that he had sexual intercourse with Ms. Metcalf on one occasion but stated that he did not mean to impregnate her.

In August 2000, the state charged Noland with one count of rape in violation of R.C. 2907.02(A)(1)(c). Although Noland initially pled not guilty, he later changed his plea to guilty. The judge then set the matter for a combined sentencing and sexual predator classification hearing. On the eve of sentencing, Noland filed a motion to withdraw his guilty plea. After holding a hearing on Noland's motion, the judge denied Noland's motion to withdraw his plea. The judge then proceeded to sentence Noland to ten years in prison, the maximum sentence allowed. He also designated Noland a sexual predator.

Exhibit J to Return of Writ.

## II.  PROCEDURAL HISTORY

Petitioner was indicted by the 2000 term of the Washington County grand jury on rape, in violation of O.R.C. §2907.02(A).  Exhibit A to Return of Writ.  On February 26, 2002, while

represented by counsel, petitioner pleaded guilty to the charge. Exhibit B to Return of Writ.

Petitioner thereafter filed a motion to withdraw his guilty plea. He asserted:

> 1. The trial judge had presided over petitioner's divorce and domestic violence cases, and therefore was biased against petitioner and should have recused himself.

> 2. Noland did not understand the nature of his plea or its ramifications.

> 3. Noland's guilty plea was not voluntary.

Exhibit C to Return of Writ. After a hearing, the trial court denied petitioner's motion. Exhibit D to Return of Writ. On April 26, 2002, petitioner was sentenced to ten years plus five years post release control and was adjudicated a sexual predator. Exhibit E to Return of Writ. Represented by counsel, petitioner filed a timely appeal. He asserted the following assignments of error:

> 1. The trial court erred, in violation of Crim.R. 32.1, when it denied his guilty plea thereby denying him due process and the right to a jury trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

> 2. Thee trial court erred in sentencing Dennis Noland to a maximum prison term thereby denying him due process as required by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

> 3. Dennis Noland's due process rights were violated when the court labeled him a sexual predator, in the absence of clear and convincing evidence to support that label. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution; R.C. 2950.09(B)(3).

> 4. Dennis Noland was denied his constitutional right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when his attorney failed to object to the trial court's

improper sentence and improper sexual predator label.

*See* Exhibit J to Return of Writ. On March 12, 2003, the appellate court affirmed the judgment of

the trial court. *Id.* Still represented by counsel, petitioner filed a motion to certify conflict on the

following issue:

> When a trial court sentences an individual to non-minimum,
> consecutive or maximum sentences, must the trial court make the
> requisite findings from the bench at the sentencing hearing or is it
> sufficient to make the findings for the first time in the sentencing
> entry? R.C. 2929.13(B); R.C. 2929.14(B); R.C. 2929.19(B).

Exhibit K to Return of Writ. The appellate court granted petitioner's motion. Exhibit L to Return

of Writ. Again represented by counsel, petitioner filed a notice of certification of conflict with the

Ohio Supreme Court, in which he raised the same issue. Exhibit M to Return of Writ. Petitioner also

filed an appeal of the appellate court's decision, in which he raised the following proposition of law:

> Before a trial court sentences an individual to a maximum sentence,
> the trial court must set forth its findings and reasons from the bench
> at the sentencing hearing.

Exhibit N to Return of Writ. Petitioner's cases were consolidated and held for decision in *State v.*

*Comer. See* Exhibit O to Return of Writ. On August 27, 2003, the Supreme Court reversed the

appellate court's judgment, and remanded the case for re-sentencing under *State v. Comer*, 99 Ohio

St.3d 463. Exhibit P to Return of Writ. After a January 22, 2004, hearing, the trial court re-

sentenced petitioner in a February 6, 2004, entry to ten years plus five years post release control.

Exhibit S to Return of Writ. Represented by new counsel, petitioner again filed an appeal of his

sentence to the Fourth District Court of Appeals. He asserted the following assignment of error:

> The trial court erred when it imposed a maximum sentence without
> stating adequate reasons during the resentencing hearing to support
> the finding that this offense constituted the worst form of the offense.

Exhibit T to Return of Writ. In an entry dated May 21, 2004, the state appellate court indicates that, on May 4, 2004, appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), to withdraw, that identified the same foregoing potential claim. Exhibit U to Return of Writ. Petitioner filed a *pro se* supplemental brief, in which he raised various claims of ineffective assistance of trial counsel. Exhibit V to Return of Writ. On November 5, 2004, the appellate court affirmed the judgment of the trial court. Exhibit X to Return of Writ. Proceeding *pro se*, petitioner filed a timely appeal to the Ohio Supreme Court, in which he asserted that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). Exhibit Y to Return of Writ. On March 23, 2005, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit Z to Return of Writ.

Additionally, on April 20, 2006, petitioner filed a delayed application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). Exhibit 1 to Supplemental Return of Writ. On May 16, 2006, the state appellate court denied the application as untimely. Exhibit 2 to Supplemental Return of Writ. Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court; however, on October 4, 2006, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. Exhibit 5 to Return of Writ.

On July 13, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. On May 26, 2006, all of petitioner's claims, with the exception of his allegation that his sentence violated *Blakely,* were dismissed. Doc. No. 13. Proceedings were stayed from May 26, 2006, to November 9, 2006. Doc. Nos. 13, 20.

### III. *BLAKELY*

Petitioner asserts that his sentence violated *Blakely* because he was sentenced to the maximum

term of ten years incarceration on rape, in violation of O.R.C. §2907.02(A)(1)(c), under Ohio statutes that required judicial fact finding for imposition of the maximum sentence. As discussed, it is the position of the respondent that this claim is procedurally defaulted because petitioner first presented his *Blakely* claim on appeal to the Ohio Supreme Court, but did not present a *Blakely* claim in the appellate court below.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural

forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

The record indicates that petitioner, a layman, reasonably promptly and fairly presented his *Blakely* claim to the state courts. Petitioner was re-sentenced in January 2004, in a February 6, 2004, journal entry, and prior to the United States Supreme Court's June 24, 2004, decision in *Blakely*. His attorney filed the appellate brief and request to withdraw as appellate counsel under *Anders, supra,* 386 at 738, in May 2004, again prior to *Blakely*. Additionally, the record appears to indicate[1] that petitioner filed his *pro se* brief raising supplemental assignments of error on June 24, 2004 the same day that *Blakely* was decided. *See* Exhibit V to Return of Writ. On November 5, 2004, the state appellate court affirmed petitioner's sentence. Exhibit X to Return of Writ. Petitioner thereafter first presented his *Blakely* claim in a timely appeal to the Ohio Supreme Court. Exhibit Y to Return of Writ.

Respondent also argues that, although *Blakely* was not decided until June 24, 2004, after appellate briefs had been filed in this case, the claim is procedurally defaulted because petitioner failed to raise a claim under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This argument fails.

In *Apprendi v. New Jersey, supra*, 530 U.S. at 490, the United States Supreme Court held:

---

[1] The date that petitioner's *pro se* supplemental brief was filed is difficult to decipher.

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Id.* In *Blakely v. Washington, supra*, 542 U.S. at 303, the Supreme Court held:

that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*

*Id.*

Petitioner's sentence did not violate *Apprendi,* as that case had been interpreted prior to the Supreme Court's decision in *Blakely,* as he was not sentenced beyond the statutory maximum term authorized for a conviction of rape, under O.R.C. §2907.02.  *See* O.R.C. §2929.14(A)(1)(a first degree felony is punishable by three to ten years incarceration).  Further, petitioner was not unreasonable in failing to anticipate the Supreme Court's decision in *Blakely*.  *See United States v. Burgess,* 142 Fed.Appx. 232, 241 unpublished, 2005 WL 1515327 (6th Cir. June 22, 2005) (failure to predict Supreme Court's decision in *Booker* does not constitute ineffective assistance); *Raines v. United States,* 2006 WL 335695 (W.D.Michigan, February 13, 2006)(same).

Additionally, although the Ohio Supreme Court ordinarily does not entertain claims not raised in the appellate court below, *see Mitts v. Bagley*, 2005 WL 2416929 (N.D. Ohio September 29, 2005)(habeas petitioner's failure to raise a claim in the Ohio Court of Appeals precludes review by the Ohio Supreme Court), citing *Fornash v. Marshall*, 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)(citing *State v. Phillips*, 27 Ohio St.2d 294, 302 (1971)); *Blakely* has apparently created an exception to this rule.  *See State of Ohio v. Scranton Buchanan*, 2006 WL 3059911 (Ohio App. 7 ]Dist. October 26, 2006):

[T]he principles of waiver do not apply to *Foster*.

... *Foster* and its progeny created an exception to the doctrine of waiver. Many of the cases the Ohio Supreme Court has remanded pursuant to *Foster* involved post-*Blakely* sentencing dates. Yet, the Ohio Supreme Court gave no indication whether *Blakely* issues were raised to the trial court. Instead, it has unlimitedly remanded the cases. *See State v. Moser*, 5th Dist. No. 05CA39, 2006-Ohio-165 (sentencing took place on April 20, 2005); *State v. Bryant*, 9th Dist. No. 22723, 2006-Ohio-517 (sentencing took place on May 9, 2005), *State v. Kendrick,* 2d Dist No. 20965, 2006-Ohio-311 (sentencing took place on March 9, 2005), *State v. Phipps*, 8th Dist. No. 86133, 2006-Ohio-99 (sentencing took place on March 3, 2005); *State v. Hampton*, 10th Dist. No. 04AP-806, 2005-Ohio-7063 (sentencing took place on July 12, 2004), *State v. Herbert*, 3d Dist No. 16-5-08, 2005-Ohio-6869 (sentencing took place on May 24, 2005); *State v. Wassil*, 11th Dist. No.2004-P-0102, 2005-Ohio-7053 (sentencing took place on October 18, 2004); *State v. Cottrell*, 7th Dist. No. 04CO53, 2005-Ohio-6923 (sentencing took place on September 3, 2004). This is just a small representative sample of cases from eight different appellate courts which affirmed sentences in which the defendant was sentenced post-*Blakely*, and in which the Ohio Supreme Court later reversed the sentences and remanded for resentencing under *Foster.*

The above cited cases contain no clear indication that *Blakely* issues were preserved for review. Yet, a review of the cases seems to indicate that they were not. In both the Phipps (Eighth Appellate District) and *Kendrick (*Second Appellate District) cases, it does not appear that *Blakely* issues were raised to the appellate courts. In neither of those decisions is *Blakely* even mentioned. Thus, it appears as if *Blakely* was raised for the first time to the Ohio Supreme Court and yet the Court still reversed and remanded that case for resentencing pursuant to *Foster.*

If that were not enough for this court to conclude that the doctrine of waiver is inapplicable to *Foster* issues, in *Cottrell, Blakely* issues were not raised to the trial court. Yet, the Ohio Supreme Court still reversed and remanded the case for resentencing pursuant to *Foster.* Thus, the Supreme Court's reversal and remanding of *Cottrell* for resentencing based on *Foster* is a clear indication that Foster is a special case in which the doctrine of waiver is inapplicable.

Accordingly, considering all the above, we agree with the Sixth Appellate District and hold that the doctrine of waiver is

inapplicable to *Foster* issues.

*Id.*

Because the state courts did not address the merits of petitioner's *Blakely* claim, such issue is reviewed *de novo* in federal habeas corpus proceedings. *Dyler v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006), citing *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005). A review of the record demonstrates that Noland was sentenced in violation of *Blakely*. He pled guilty to one count of rape in violation of Ohio Revised Code § 2907.02(A)(1)(c). That is a first degree felony. It is punishable by a term of three, four, five, six, seven, eight, nine or ten years in prison. Ohio Revised Code § 2929.14(A)(1). At the time Noland was re-sentenced, the judge had to impose the minimum term of three years unless he made findings of fact that supported a statutory enhancement of the sentence. Ohio Revised Code § 2929.14(B). *State v. Foster*, 109 Ohio State 3d 1, 19-20 (2006). Ohio's statutory procedure of permitting a judge, rather than a jury, to make the factual findings supporting an enhancement of the sentence violated the Constitution. *Blakely v. Washington*, 542 U.S. 296, 304-06 (2004); *Foster*, 109 Ohio State 3d at 25.

The re-sentencing hearing, the trial judge's findings supporting a statutory enhancement of the presumptive sentence, and the judgment entry all support the finding that the sentence was imposed in violation of *Blakely*. The trial Court's judgment entry reads, in relevant part:

> The Court notes for the record that on February 26, 2002, the Defendant plead[ed] Guilty to Rape, a first degree felony, in violation of Ohio Revised Code section 2907.02(A)(1)(c), as charged in the Indictment filed on August 10, 2000. The Court ordered a pre-sentence investigation and report by the Washington County Adult Probation Department. The original report was submitted to the

Court on April 5, 2002. The Court then requested a supplemental investigation and report. It was received by the Court on April 11, 2002.

\*\*\*

The Defendant... appealed his sentence to the Ohio Supreme Court in Case No. 03-731. The Ohio Supreme Court reversed the case and remanded it for re-sentencing, under the authority of State v. Comer (2003), 99 Ohio St.3d 463. The re-sentencing hearing was held on January 22, 2004.

\*\*\*

The State presented evidence and Attorney Cauthorn made a statement, asking that the Court re-impose the maximum sentence of 10 years, citing facts from the record and statutory seriousness and recidivism factors.

Whereupon the Court inquired of Attorney Smith if he wanted to make a statement on behalf of the Defendant as to sentencing in these cases, and Attorney Smith made a statement.

Whereupon the Court inquired of the Defendant if he wanted to make a statement in his own behalf or present any information in mitigation of punishment, and the Defendant said that he did not want to make a statement.

The victim's representative was present at the hearing but did not choose to make a statement at the Hearing.

Whereupon the Court has considered the record of this case, the testimony presented, the oral statements made this day, the victim impact statements and the pres-sentence report, and the parties pre-sentencing memoranda, as well as the principles and purposes of sentencing pursuant to O.R.C. sections 2929.11 through 2929.19, as to the sentence to be imposed for Rape, a felony of the first degree.

The Court then made the following determinations:

[A] The Court FINDS the following factors present that make this offense more serious:

(1) the injury to the victim was made worse by the physical or mental condition of the victim and her developmental age. The victim was physically age 23 at the time of the offense, however because the victim is mentally retarded, she has the mental capacity of a 3 ½ year old child;

(2) the crime caused serious physical and emotional harm to the victim and her family. The family felt compelled to abort the child which

11

resulted from the offense and the family and the victim have suffered greatly as a result. As indicated in the victim's mother's statements and letter to the Court, the abortion procedure was extremely traumatic to the victim and her family and there has been a change in the victim's behavior or personality since the offense. The emotional harm to the victim's mother was also substantial, due to the abortion and due to the fear and uncertainty she experienced during the investigation regarding the identity of the perpetrator and her ability to protect her daughter;

(3) the Defendant's relationship to the victim facilitated the offense. The victim was the Defendant's step-daughter and periodically lived in the Defendant's home.

[B] The Court FINDS that there are no factors which make this crime less serious than the norm.

[C] The Court FINDS the following factors present which make this Defendant more likely to recidivate:

(1) The Defendant has a prior criminal conviction as an adult;

(2) the Defendant shows no remorse, claiming he was "set up" to commit the offense. He also has attempted to claim that the sex was consensual and has thus attempted to blame the victim and her mother. Specifically, the Court finds that this Defendant has presented the worst case of denial of responsibility that the Court has ever seen.

[D] The Court FINDS that only one factor indicates that this defendant is less likely to recidivate, to-wit that he had led a law abiding life for a significant number of years prior to this offense.

[E] The Court has weighed the seriousness and recidivism factors and has considered the overriding purposes of felony sentencing to protect the public from future crime by this offender and others, and the purpose to punish this offender, and has considered the need for incapacitating this offender and deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victims.

[F] The Court further FINDS that the Defendant is not amenable to any available community control sanctions.

[G] The Court further FINDS that the minimum sentence would not be adequate to protect the public nor to punish the offender and that the minimum sentence would demean the seriousness of the Defendant's conduct.

Thereupon the Court FINDS that the sentence it is about to impose

does not demean the seriousness of the offender's conduct, and is not disproportionate to the seriousness of the Defendant's conduct.

Therefore, be it ORDERED and ADJUDGED that upon consideration of the pre-sentence investigation and report, the record of the case, the victim impact statement, the parties memoranda and upon the statements made in Court this day, and upon consideration of the factors set forth in Ohio Revised Code sections 2929.11, 2929.12, 2929.13, 2929.14, and 2929.19, and upon Defendant's Guilty plea to the first degree felony offense of Rape, a violation of O.R.C. section 2907.02(A)(1)(c), as charged in the Indictment, the Defendant Dennis Noland be imprisoned and confined in the Correctional Reception Center at Orient, Ohio, for a definite period of ten (10) years, and be ordered to pay costs of prosecution.

The Court has imposed a prison term which is a first prison term, and is not the minimum sentence because the Court FINDS that imposing the minimum sentence would not be adequate to protect the public nor to punish the offender, and the Court makes its FINDINGS based upon the following factors:

[1] The serious effect of the offense on the victim and her mother;

[2] The Defendant's repeated denial, in spite of two positive DNA tests, and his refusal to cooperate with investigators in identifying the perpetrator;

[3] The Defendant's repeated attempts to blame the victim and her mother or claim that the sexual activity was consensual, in spite of the victim's severe mental retardation;

[4] The fat that the victim was severely mentally retarded.

The Court has imposed the maximum sentence, and the Court did so for the following reasons:

The offender has committed the worst form of the offense. As the Court previously noted, the Defendant raped his mentally retarded stepdaughter, impregnating her and forcing the family to choose to abort the child. The letter provided to the Court by the victim's mother has extensively detailed the emotional and physical impact of the crime on the victim and the victim's mother.

Exhibit S to Return of Writ. The trial judge stated at petitioner's January 22, 2004, re-sentencing hearing:

I have considered the record, the oral statements made in open court this date, the letters from the victim, and the other letters that were submitted, the pre-sentencing memorandums by Counsel, the pre-sentence investigation ... and the principles and purposes of sentencing set forth in 2929.11, and the seriousness and recidivism factors set forth in 2929.12 of the Ohio Revised Code.

\*\*\*

This Court, as far as recidivism factors, believes that Mr. Noland shows no remorse for the offense... quite frankly, it's one of the worst cases of denial and deflecting blame this Court's ever seen.

... [H]e was a law abiding for a [sic] significant number of years prior to the offense.... [T]hat has to be noted.

... [S]o far as the seriousness factors, more serious, injury to the victim was worsened by the physical or mental condition of the victim, and the age of the victim. The victim did suffer serious psychological and physical harm, as a result of the offense. She had to undergo an operation for abortion. And her mother details how she was a very loving and trusting child before, and how this affected her.

There was a position of trust. He was the stepfather of the child, and the relationship with... the victim, facilitated the offense.

\*\*\*

In this case, the DNA test that was reported to the Court was, it was 99 – and it's in PSI – 99.9 percent, he was the father.

The... child here, Polli, functions on a severe range of mental retardation, with an IQ of 36 or below. Her age equivalency score was – the test done, was 3.4 years. She has limited communication skills and requires assistance with all areas of daily living. Her eyesight is poor. Her mother described her a loving child prior to this incident. She is a child that will respond best by constant, positive reinforcement and continuity. She will most likely work at a level that is below her abilities. They did note that. But she needs much positive reinforcement. She... needs consistently assessed. She requires 24 hour assistance with personal care, dressing, eating, preparing meals, bathing....

\*\*\*

For a long time, Polli's mother blamed her caretakers. She could not believe it... happened in her own home, and she had to live with the realization that it did happen in her own home, and she details the effect of that on her.

Mr. Noland refused to give a DNA sample, but they obtained a search warrant and got it, and it came back, 99.9 percent. Mr. Noland, in his statement... told Detective Schuck – he also tries to blame Polli's mother – that he and his wife had not had sexual intercourse for over a year. There had been trouble, and there would be long periods where they'd not have sexual intercourse. He... felt Polli was a loving and compassionate individual, who was reasonably truthful... but claimed that she was overly affectionate, when it came to hugging and kissing him, and that there were times she would hug him and place her head in his groin area. He's almost painting a picture where this girl is coming on to him, with a 36 IQ. Lady, actually. She was 23.

...He also stated... it was a consensual incident. And even though she was mentally retarded, she was a lot smarter than people thought, and she had a lot of people fooled.

He did say, he did not mean[] to get her pregnant, but he took no precaution, such as using condoms.

... [H]e minimizes the seriousness of this conduct tremendously, in this Court's opinion. He claims she did not have the mentality of a three year old. He said she could cook and sing Karaoke. He also said he was not sure if he'd had sex with a female in the bed. He stated it was unusual for... Polli to be at their residence, and he feels that her mother set them up.

He also, then, went into trying to blame an individual that had been clearing land and building fences at the time, but he did not expand on that statement.

This is an absolute lie, but it shows... the efforts he's gone to blame everybody but himself....

He also said, Judge Lane had been involved during the start. He feels that everything bad that has occurred was due to Judge Lane being biased.

He blames everybody. He takes no responsibility. He doesn't feel he's guilty of rape, feels he was stupid for staying with Polli's mother. He plead guilty because he was unable to fight two blood tests. So, he must have had a second test, other than the one the State did.

There is a prior conviction of aggravated menacing. And that's it. And that... was back in '81.

So, based on those facts... this Court does believe, pursuant to 2929.14(C), that this Defendant has committed the worst form of the

offense. And for those facts, this Court does believe it is appropriate to give Mr. Noland the maximum sentence. And the Court imposes the maximum sentence of ten years.

This was a child, this was an adult who needed all sorts of special protection. She needed positive reinforcement. The family did not believe in abortion.... Polli's mother... details how Polli had to go through this procedure, and she couldn't communicate with her, what she was going through. And the... feelings of guilt... her mother has had, too, has [sic] been just tremendous.

\*\*\*

I can't think – and I also thought last night, about this – and I can't think of [a case] ... that I've dealt with. I've been here –

since January of '93, and I was, prior to that, Municipal Judge, and I did preliminary hearings. I can't think of any that's worse.

\*\*\*

I can't think of any case that I've seen, that is more atrocious on its facts than this case.

*Sentencing Transcript*, at 31-39, *Exhibits to Petition*.

In *State v. Foster*, 109 Ohio St.3d 1 (2005), the Ohio Supreme Court held that Ohio's sentencing statute requiring judicial fact finding prior to imposition of the maximum sentence on a defendant who has not previously served a prison term, violates *Blakely*. The Ohio Supreme Court held in relevant part:

R.C. 2929.14(C), which states that " *the court* imposing a sentence upon an offender for a felony *may impose the longest prison term* authorized for the offense pursuant to division (A) of this section *only* upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." (Emphasis added.)

Although this statute does not use the word "findings," our holdings in *State v. Edmonson,* 86 Ohio St.3d at 329, 715 N.E.2d 131, and *State v. Evans,* 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, recognize that R.C. 2929.14(C) is mandatory and prohibits maximum sentences unless the required findings of fact are made

16

beforehand. The First Appellate District applied an *Apprendi* and *Blakely* analysis to determine that judicial fact-finding to reach a maximum prison sentence was improper. It then applied the pertinent sentencing statutes without the unconstitutional findings and reduced the sentence to what it could have been without the judicial finding of "worst form of the offense," that is, one year less than the ten-year maximum for a first-degree felony. *State v. Bruce,* 159 Ohio App.3d 562, 2005-Ohio-373, 824 N.E.2d 609, ¶ 9-10.

*Bruce* was correct in its analysis, if not in its solution. We have consistently held that R.C. 2929.14(C) requires that specific findings be made before a maximum sentence is authorized. *Evans,* 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, at ¶ 15; *Edmonson,* 86 Ohio St.3d at 325, 715 N.E.2d 131. As it stands, R.C. 2929.14(C) creates a presumption to be overcome only by judicial fact-finding. It does not comply with *Blakely.*

*Id.*, at 20.

In this case, the trial court imposed the maximum term of incarceration on the basis of judicial fact finding under the terms of Ohio's statutes that have since been stricken as constitutionally invalid under *Blakely*. Therefore, and for the reasons detailed by the Ohio Supreme Court in *Foster*, the Magistrate Judge likewise concludes that imposition of the maximum term in violated *Blakely*.

Assuming a *Blakely* violation, respondent argues that it was harmless error. *See Washington v. Recuenco*, 126 S.Ct. 2546 (2006)(holding that harmless error analysis applies to *Blakely* violations).

To establish harmless error such that this Court lets stand a defendant's sentence in spite of errors at trial or sentencing below, the government must "prove that none of the defendant's substantial rights [has] been affected by the error." *United States v. Oliver*, 397 F.3d 369, 381 (6th Cir.2005) (citing Fed.R.Crim.P. 52(a)); *United States v. Barnett*, 398 F.3d 516, 530 (6th Cir.2005). *See also Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (noting that the government bears the burden of proof on harmless error); *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (same). To carry this burden, the

government must demonstrate to this Court with certainty that the error at sentencing did not "cause[ ] the defendant to receive a more severe sentence." *Oliver*, 397 F.3d at 379 (internal citation omitted); *United States v. Hazelwood,* 398 F.3d 792, 801 (6th Cir.2005) ("Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless.") (emphasis added).

*United State v. Johnson,* 467 F.3d 559 (6th Cir. 2006).

In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal must decide whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), quoting *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (internal quotation omitted). The harmless error analysis articulated in *Brecht* applies even if a federal habeas court is the first to review for harmless error. *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir.1999).

*Lakin v. Stine*, 358F.Supp.2d 605, 616 (E.D. Michigan 2005).

Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless--i.e. any such error "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

*United States v. Hazelwood*, supra, 398 F.3d at 801; *United States v. Christopher*, 415 F.3d 593-94 (6th Cir. 2005)(citations omitted).

In *Washington v. Recuenco*, 126 S.Ct., above, state law imposed a three-year sentencing enhancement if a defendant used a firearm to commit an assault, but a one-year enhancement if he

used a "deadly weapon." The verdict form asked the jurors whether the defendant used a "deadly weapon." They answered that question affirmatively. The evidence at trial was that defendant used a firearm to commit the assault. The lower court held that it was *Blakely* error for the trial judge to make the finding that defendant used a firearm and impose a three-year sentencing enhancement instead of a one-year enhancement based on the jury verdict that defendant used a deadly weapon. The United States Supreme Court held that the lower court erred in holding that the error was structural and could not be harmless. It remanded for the lower court to determine whether the facts established beyond a reasonable doubt that the *Blakely* error was harmless.

Here there was no jury verdict. Consequently, there are no facts from which this court could hold that the error was harmless. The error here was that the defendant did not admit the facts justifying the sentencing enhancement in his guilty plea, and the judge--acting without a jury--made the factual determination that supported the enhancement. Since defendant did not agree to any set of facts during his guilty plea or at sentencing, a federal habeas corpus court cannot find harmless error.

It is true that the trial judge's fact findings strongly supported a sentencing enhancement under the statutory scheme struck down in *Foster*. Noland attempted to argue that he had consensual sex with the victim, but his guilty plea precluded that argument. The victim had a mental capacity of a 3½ year old. She and her family suffered severe emotional harm. The victim became pregnant by Noland and had an abortion. Noland was in a position of trust. He was the victim's step-father. He had an adult felony conviction. There was no credible evidence undermining the trial judge's factual findings supporting the statutory enhancement of Noland's sentence. If the question were–at re-sentencing could a judge make fact findings that would require him to impose a sentence of less than

ten years–then I would not hesitate to say that the *Blakely* error here was harmless beyond a reasonable doubt. But that is not the question.

The Constitution did not empower the trial judge to make the fact findings necessary under Ohio's statutory scheme to enhance sentence. Only the defendant's admission of those facts during his guilty plea or a jury's fact-finding beyond a reasonable doubt could support an enhancement. So the fact that overwhelming evidence supported the judge's fact-finding does not render the constitutional violation harmless error.

The remedy the Supreme Court of Ohio crafted for a sentence imposed under the Ohio statutory sentence enhancement provisions in violation of *Blakely* was to sever the unconstitutional statutory provisions and remand for re-sentencing:

> {¶ 97} The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms. R.C. 2953.08(G), which refers to review of statutory findings for consecutive sentences in the appellate record, no longer applies. We also excise R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders.
>
> {¶ 98} . . . The excised portions remove only the presumptive and judicial findings that relate to "upward departures," that is, the findings necessary to increase the potential prison penalty. . . .
>
> {¶ 99} We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.4(A) based upon a jury verdict or admission of the defendant. . . . After the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications. . . .
>
> {¶ 100} Accordingly, we have concluded that trial courts have full discretion

20

> to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.

*Foster*, 109 Ohio State 3d at 29-30. Only re-sentencing under Ohio's sentencing statutes, as revised by *Foster*, can cure the *Blakely* error.

The record fails to reflect that, absent unconstitutional fact findings, the trial court would impose the same sentence. For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


s/Mark R. Abel_____

United States Magistrate Judge
