LEXSEE 142 FED. APPX. 232, 240

**UNITED STATES OF AMERICA, Plaintiff-Appellee v. WILLIAM BURGESS, IV, Defendant-Appellant**

**No. 03-4234**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**05a0531n.06;**

*142 Fed. Appx. 232; 2005 U.S. App. LEXIS 12339*

**June 22, 2005, Filed**

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by *Burgess v. United States, 126 S. Ct. 296, 163 L. Ed. 2d 259, 2005 U.S. LEXIS 7067 (U.S., Oct. 3, 2005)*

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO. 03-00067. Ann Aldrich, District Judge.

**COUNSEL:** For UNITED STATES OF AMERICA, Plaintiff-Appellee: Joseph P. Schmitz, Asst. U.S. Attorney, U.S. Attorney's Office, Cleveland, OH

For WILLIAM BURGESS, IV, Defendant-Appellant: William Burgess, IV, Federal Correctional Institute, Morgantown, WV; Mark Diamond, Murray Hill Station, New York, NY

**JUDGES:** BEFORE: CLAY and SUTTON, Circuit Judges; REEVES, District Judge. *

    * The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**OPINION BY:** CLAY

**OPINION:**

    [*234]    **CLAY, Circuit Judge.** Defendant-Appellant William Burgess, IV, appeals his sentence imposed on September 3, 2003 after pleading guilty to one count of conspiracy to distribute cocaine, in violation of *21 U.S.C. § 841* [**2] *(a)(1)*, and one count of carrying a firearm in relation to a drug trafficking crime, in violation of *18 U.S.C. § § 924(c)( 1 )(A)(i)* and *2*. Burgess argues that the district court erred in failing to grant him, pursuant to United States Sentencing Guidelines Manual ("Guidelines") *§ 3B1.1*, a downward adjustment in his offense level for his purportedly minor or minimal role in the offense, and grant him, pursuant to Guidelines *§ 4A1.3(b)*, a downward departure below the applicable Guidelines range for Criminal History Category II on the ground that this category substantially over-represents the seriousness of his conduct. For the reasons that follow, we hold that Burgess has waived his right to appeal these issues. Accordingly, his appeal shall be **DISMISSED.**

**I**

    On February 20, 2003, the Grand Jury sitting in the Northern District of Ohio charged Charlene Romane, Defendant-Appellant William Burgess, and Lesley P. Smith in a six-count indictment for conspiracy to distribute cocaine. The alleged conspiracy began on January 9, 2003, when Romane sold an undercover police officer approximately one ounce of cocaine for $ 1,000. Romane also discussed with the [**3] officer a plan to sell him approximately nine additional ounces of cocaine. On January 15, 2003, Romane asked Burgess to help her obtain the nine ounces of cocaine. Burgess then asked Smith to supply him with the cocaine. That evening, Romane and Burgess traveled to the parking lot of a Cir-

cuit City store in Niles, Ohio in order to sell the cocaine to the undercover officer. They brought a loaded Ruger .9mm pistol with them. Shortly thereafter, Smith arrived with the nine ounces of cocaine. Smith had a loaded Hi-Point .9mm pistol on his person. Romane then displayed a sample of the cocaine to the undercover officer for purposes of facilitating the sale. The Grand Jury charged Burgess in Count Two of the indictment with conspiracy to distribute cocaine, in violation of *21 U.S.C. § 841(a)(1)*; in Count Three with possession with intent to distribute nine ounces of cocaine, in violation of *21 U.S.C. § 841(a)(1)* and *18 U.S.C. § 2*; and in Count Four with carrying a firearm in relation to a drug trafficking crime, in violation of *18 U.S.C. § § 924(c)(1)(A)(i)* and *2*.

Burgess signed a written plea agreement **[**4]** on May 30, 2003 which states that Burgess read and understood it and had an opportunity to discuss it with his attorney. Burgess agreed to plead guilty to Counts 2 and 4 of the indictment, and the government agreed to move to dismiss Count 3.

Pursuant to the plea agreement, Burgess acknowledged that Count 2 carries a maximum possible penalty of 20 years' imprisonment, that Count 4 carries a maximum possible sentence of life imprisonment, and that the sentence for Count 4 must be served consecutively to any sentence imposed for Count 2. Burgess further acknowledged that "his sentence [would] be determined in accordance with the mandatory term of imprisonment required by *18 U.S.C. § 924(c)* and the United States Sentencing Guidelines (["Guidelines"]), which [would], for Count 2 of the Indictment, prescribe a range within which the sentencing court [would] be required to fix the defendant's sentence on that charge."

The parties stipulated that the appropriate base offense level for Count 2 was 20, **[*235]** that Burgess was entitled to a three-level downward adjustment for acceptance of responsibility, and that, unless the court determined that Burgess was entitled **[**5]** to a downward departure under Guidelines *§ 3B1.2* for his role in the offense, the total offense level for Count 2 would be 17. The parties further stipulated that the appropriate sentencing range for Count 4 would be a consecutive term of imprisonment of five years pursuant to *18 U.S.C. § 924(c)(1)(A)(i)* and Guidelines *§ 2K2.4(b)*.

The agreement specifically reserved Burgess's right to ask for a downward adjustment in his offense level pursuant to Guidelines *§ 3B1.2* for his role in the offense. *Id.* The agreement also indicated that if Burgess were to render "substantial assistance" in connection with the investigation and prosecution of other individuals, the government would move for a downward departure pursuant to Guidelines *§ 5K1.1, 18 U.S.C. §*

*3553(e)*, and/or *Fed. R. Crim. P. 35(b)*. The parties agreed, however, that, except for a downward departure under Guidelines *§ 5K1.1*, they would not ask the Court to depart from the guideline range prescribed for Count 2. Burgess further agreed to "give up his right to seek a downward departure from the applicable guidelines range and that the **[**6]** United States Attorney's Office [would] give up its right to request an upward departure."

In the section of the agreement captioned "Waiver of Appellate and Post-Conviction Rights," Burgess agreed to waive his appeal rights under *18 U.S.C. § 3742* and his right to collaterally attack his sentence under *28 U.S.C. § 2255*, except with regard to Burgess's right to appeal: (a) any punishment in excess of the statutory maximum; (b) any punishment to the extent it constitutes an upward departure from the Sentencing Guideline range agreed upon in the plea agreement; or (c) "the district court's determination of the Defendant's Criminal History Category." Burgess also reserved his right to bring an appeal or a collateral attack regarding claims of ineffective assistance of counsel or governmental misconduct.

At the change of plea hearing, Burgess confirmed that he understood the nature of the charges in Counts 2 and 4, the maximum possible sentence he faced on Count 2, and the five-year mandatory minimum he faced regarding Count 4. Burgess further admitted that, by pleading guilty, he was waiving his right to a trial by jury, the right to **[**7]** counsel at every stage of the proceedings, the right to testify on his own behalf or not testify at all, the right to compel witnesses to appear on his behalf, and the right to be presumed innocent unless the government could prove guilt beyond a reasonable doubt. Burgess also admitted that he was waiving his right to appeal from his convictions on Counts 2 and 4 and that "there may be some aspects of the sentence that could be appealed." After Burgess admitted the factual basis for the plea set forth in the agreement, the government summarized the promises in the agreement. Among other things, the prosecutor pointed out that Burgess had reserved his right to seek a downward adjustment in his offense level for his role in the offense, and that the agreement allows for the possibility that the government might move for a downward departure based on substantial assistance. The prosecutor added, however:

> With respect to other possible departures, Your Honor, both sides have agreed to give up their right to seek any other departures. By virtue of that understanding, your Honor, the Defendant will give up his right to seek a downward departure; and conversely, the United States **[**8]**

Attorney's Office will give **[*236]** up its right to seek an upward departure.

The prosecutor also explained the agreement's waiver of appeal provisions, noting that Burgess had waived his right to appeal his conviction and sentence, except with respect to his right to appeal punishment that may exceed the statutory maximum, punishment that results from an upward departure, and the court's determination of Burgess's criminal history category.

After confirming that no one had made any other promises or threats to Burgess for his guilty plea, the court ruled that Burgess understood the nature of the charges against him, that his plea was voluntary and intelligent, and that there was a substantial factual basis for his guilty plea to Counts 2 and 4. The court then accepted Burgess's guilty plea.

Relying on the plea agreement, the probation officer who prepared the presentence report noted that the base offense level for Count 2 was 20, but reduced it to 17, based on Burgess's acceptance of responsibility. The probation officer further noted that the guilty plea to Count 4 mandated a consecutive term of imprisonment of five years.

The probation officer then calculated two criminal history **[**9]** points based on Burgess's May 11, 2000 conviction for drug abuse (resulting in six months of non-reporting probation) and his May 16, 2001 conviction for possession of drug paraphernalia (resulting in a 30-day suspended sentence and six months of probation). The latter conviction resulted after Burgess was pulled over and was discovered to have a smoking pipe containing marijuana residue. Burgess's two criminal history points translated into a Criminal History Category II, pursuant to the Sentencing Table at Guidelines Chapter 5, Part A.

The presentence report noted that, for Count 2, an offense level of 17 and a Criminal History Category of II, Burgess's sentencing range was between 27 and 33 months. The report further noted that, for Count 4, *18 U.S.C. § 924(c)(1)(A)(i)* imposes a mandatory consecutive sentence of five years. Neither Burgess nor the government filed objections to the report.

At the sentencing hearing, Burgess confirmed that he had an opportunity to review the presentence report and that he had no objections to it. Burgess's attorney then argued that Burgess's two "convictions for nonviolent minor drug offenses," which occurred two and three **[**10]** years prior to his present convictions, made his Criminal History Category II as opposed to Category I. Burgess's attorney acknowledged that the right to move for a "downward departure for overstatement of criminal

history points . . . [is] not spelled out in the plea agreement," but argued that a Category II Criminal History was not contemplated at the time. Burgess's attorney asked the court "to take those factors into consideration when sentencing him."

Burgess's attorney further argued that Burgess's role in the criminal activity was minor. His attorney pointed to the facts that (a) Defendant Romane, Burgess's aunt, is twice Burgess's age; (b) Romane provided the weapon for Burgess and placed it under the seat of the car; and (c) Romane asked him to contact other people for cocaine. Burgess's attorney therefore requested a downward departure "minimiz[ing] his exposure to the 60 months sentence."

The government objected to Burgess's attempt to seek any kind of downward departure. The government noted that Burgess's request for a downward departure for his role in the offense actually is not a departure, but an "adjustment" under **[*237]** the Guidelines. It further argued that, in any **[**11]** event, the plea agreement does not permit either party to seek a downward departure except based on substantial assistance. The government also asserted that Burgess's request for a downward departure failed on the merits because the parties' factual stipulation shows that Burgess was instrumental to the conspiracy; he admittedly had the connection to the cocaine supplier. The government likewise argued that Burgess's argument that his criminal history is overrepresented was in the nature of a request for a downward departure, which the plea agreement prohibits. The government also argued that Burgess's argument failed on the merits because the prior convictions were only one year apart and were close in time to the drug conspiracy at issue in this case.

The court found no error in the presentence report's calculation of Burgess's base offense level or Criminal History for Count 2. The court then stated that it was "happy to make the term of incarceration the lowest possible under the Sentencing Guidelines" -- 27 months. The court also commented on its ability to grant a downward departure based on substantial assistance:

> I really have no opinion with respect to reducing **[**12]** the sentence any further. It is really in the hands of the prosecutor to make any motion that would say make the sentence lower than I have made it under the existing laws, this kind of sentence, I think this could be given. I can't change the rules and hopefully, perhaps some situation will come up under which you'll be able to take advantage of helping the government sometime within the next

year. If that happens then I would assume they would make a motion to lower your sentence. No one can predict that either.

The court then imposed the 60-month mandatory sentence for Count 4. Last, the court dismissed Count 3 of the indictment on the motion of the United States. Judgment was entered on September 3, 2003, and Burgess appealed on September 24, 2003.

## II

### A. Standard of Review

This Court reviews the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*. *United States v. Murdock, 398 F.3d 491, 496 (6th Cir. 2005)*(citations omitted).

### B. Analysis

A defendant in a criminal case may waive the right to appeal, as long as the waiver is knowing and voluntary. *United States v. Fleming, 239 F.3d 761, 763-64 (6th Cir. 2001)*; [**13] *United States v. Ashe, 47 F.3d 770, 775-76 (6th Cir. 1995)*. A knowing and voluntary waiver of a right to appeal contained in a plea agreement is presumptively valid and will preclude review of an issue on appeal. *United States v. Bazzi, 94 F.3d 1025, 1028 (6th Cir. 1996)*; *United States v. Allison, 59 F.3d 43, 46 (6th Cir. 1995)*. The court determines the validity of a plea under the totality of the circumstances. *Brady v. United States, 397 U.S. 742, 749, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970)*. The Constitution requires that such circumstances reflect that the defendant be informed of all the direct consequences of a guilty plea. *Id. at 755*. The record should reflect a full understanding of the direct consequences so that the plea represents a voluntary and intelligent choice among the alternatives. *North Carolina v. Alford, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970)*.

[*238] Here, Burgess attempts to argue that the district court erred in failing to grant him, pursuant to Guidelines § 3B1.1, a downward adjustment in his offense level for his purportedly minor or minimal role in the offense, and grant him, pursuant to Guidelines § 4A1.3(b), [**14] a downward departure below the applicable Guidelines range for Criminal History Category II on the ground that this category substantially over-represents the seriousness of his conduct. Burgess's ability to raise these issues on appeal depends initially on the terms of his plea agreement.

Although the plea agreement explicitly reserved Burgess's right to ask the district court for a reduction in his offense level for his purported minor role in the offense, the agreement also explicitly precludes Burgess's right to appeal the district court's adverse decision. The agreement's section entitled "Waiver of Appellate and Post-Conviction Rights" clearly states that Burgess waived his right to appeal his conviction or sentence, except an appeal of a punishment that exceeds the statutory maximum, an upward departure, or the district court's determination of Burgess's Criminal History Category. None of those exceptions apply to a request for a reduction based on Burgess's alleged minor role in the offense.

Nor do any of these exceptions permit an appeal of the district court's determination of Burgess's criminal history. Although the agreement specifically reserves Burgess's right to appeal [**15] "the district court's determination of the Defendant's Criminal History Category," that provision must be read in conjunction with the section entitled "Departures." That section states that Burgess "will give up his right seek a downward departure from the applicable guideline range and that the United States Attorney's Office will give up its right to request an upward departure." The only exception is a downward departure requested by the government under the "substantial assistance" provisions of Guidelines § 5K1.1. In other words, the agreement precluded Burgess from requesting a downward departure from the district court based on an overstated criminal history. It follows, *a fortiori,* that Burgess has no right to appeal the denial of such a request for a downward departure. Instead, the only issue pertaining to Burgess's criminal history that he could have appealed would have been an incorrect determination of his criminal history -- for example, if the court assigned incorrect point totals to prior convictions or incorrectly added the criminal history points, thereby placing Burgess in the wrong Criminal History Category. Burgess, however, has made no such allegation. He [**16] lodged no objections to the criminal history determinations and point total set forth in the presentence report, and raised no similar objections at the sentencing hearing. Accordingly, his appeal of the district court's refusal to entertain or grant a downward departure based on an overstated criminal history is not well-taken.

In an attempt to evade the plain language of the plea agreement, Burgess argues that he did not enter the agreement knowingly, voluntarily, and intelligently. Specifically, he argues that the district court failed to comply with *Fed. R. Crim. P. 11(b)(1)(N)* by failing to ensure that he understood the meaning of the waiver of appeal provisions in the plea agreement. This argument is utterly meritless. At the change of plea hearing, Burgess admitted that he understood that he was waiving his right to appeal from his convictions on Counts 2 and 4 and that "there may be some aspects of the sentence that could be appealed." His understanding [*239] was ab-

solutely correct, as the plea agreement, which he signed, largely prohibits any appeal of his sentence, except in the three circumstances noted above. Thereafter, the prosecutor [**17] explained the agreement's waiver of appeal provisions in open court, noting that Burgess had waived his right to appeal his conviction and sentence, except with respect to his right to appeal punishment that may exceed the statutory maximum, punishment that results from an upward departure, and the court's determination of Burgess's Criminal History Category. There was no manifestation of misunderstanding from Burgess, nor did his attorney object, before the court accepted his guilty plea. Under such circumstances, Burgess's plea was knowing and voluntary. *See Murdoch, 398 F.3d at 498* (dictum)("The prosecutor in summarizing the key elements of the agreement might adequately address the waiver."). He therefore is bound by its terms, including the provisions that bar his ability to raise the challenges to his sentence that he has advanced in this Court.

We further hold that Burgess's plea was not involuntary even though he did not know when he pleaded guilty that the Supreme Court would later declare the Sentencing Guidelines to be advisory in United *States v. Booker, 543 U.S.    , 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005). See United States v. Bradley, 400 F.3d 459, 464 (6th Cir. 2005)* [**18] (holding that the change in the law on appeal could not undo the defendant's plea agreement, including the waiver of appellate rights provision, which was otherwise the product of a knowing and voluntary plea); *see also id. at 465* ("Having voluntarily and knowingly bargained for a decrease in the number of counts charged against him and for a decreased sentence, Bradley cannot now extract two components of that bargain -- his agreement to be sentenced under the then-mandatory Guidelines and his agreement to waive his right to appeal -- on the basis of changes in the law after that bargain was struck.").

Finally, in a supplemental *pro se* brief, Burgess asserts that his trial counsel was constitutionally ineffective for not arguing at sentencing that the mandatory nature of the Sentencing Guidelines was unconstitutional. Burgess argues that, in September 2003, his attorney should have anticipated the Supreme Court's 2005 holding in *Booker* based on the Court's previous decision in *Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)* and the Court's subsequent decision in *Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004).* [**19]

Normally, we would decline to review an ineffective assistance of counsel claim raised on direct appeal on the grounds that the record is devoid of sufficient information concerning counsel's trial strategy and relevant attorney-client communications; the preferred avenue for raising such claims is through a post-conviction motion

pursuant to *28 U.S.C. § 2255. See Massaro v. United States, 538 U.S. 500, 504, 155 L. Ed. 2d 714, 123 S. Ct. 1690 (2003)* (holding that because litigants need an opportunity to develop the factual predicate for an ineffective assistance of counsel claim and because the record on direct appeal usually is devoted to guilt or innocence, not trial strategy, "the better-reasoned approach is to permit ineffective-assistance claims to be brought in the first instance in a timely motion in the district court under *§ 2255"); Bradley, 400 F.3d at 461-62* (declining to entertain claim that counsel was ineffective for failing to inform the defendant of case law indicating that state-law facilitation statutes, like the Tennessee statute used in defendant's case, could not be used as predicates to establish that defendant was [*240] a career offender). The [**20] concerns underlying premature ineffective assistance claims, however, are not applicable here. An opportunity to supplement the record in *§ 2255* proceedings would not shed any more light on the purported unreasonableness of Burgess's counsel's failure to object to the mandatory nature of the Guidelines. This Court can determine that issue as a matter of law based on the facts already in the record. *See United States v. Pruitt, 156 F.3d 638, 646 (6th Cir. 1998)* (holding that an exception to the general rule that ineffective assistance claims may not be considered on direct appeal applies "when the existing record is adequate to assess properly the merits of the claim"). Accordingly, we address Burgess's claim below.

Burgess's trial counsel cannot be deemed ineffective for failing to anticipate the Supreme Court's June 24, 2004 holding in *Blakely* that the *Sixth Amendment* precluded the imposition of a sentence under Washington state's sentencing system based on facts not found by a jury or admitted by the defendant. *See Blakely, 124 S. Ct. at 2537-38* (applying *Apprendi*). The Supreme Court had not even agreed to hear the appeal in *Blakely* [**21] until over a month after Burgess's sentencing. *See Blakely v. Washington, 540 U.S. 965, 157 L. Ed. 2d 309, 124 S. Ct. 429 (Oct. 20, 2003).* Nor can counsel be deemed ineffective for lacking the additional prescience to anticipate that the eventual holding in *Blakely* would lead to the Supreme Court's January 12, 2005 decision in *Booker* to remedy potential *Sixth Amendment* problems in the application of the federal Sentencing Guidelines by declaring the Guidelines advisory only, *Booker, 125 S. Ct. at 764-67,* particularly because the *Blakely* opinion makes clear that it expresses no opinion on the continuing validity of the federal guidelines, *Blakely, 124 S. Ct. at 2538 n.9.*

It also is important to note that Burgess has never claimed that the district court sentenced him above the statutory maximums for the crimes to which he pleaded guilty. He argues that the district court should have

granted him certain adjustments and downward depar-
tures so that he could receive a sentence *below* what the
admitted facts authorized. Burgess's sentence does not
raise any of the due process or *Sixth Amendment* con-
cerns that precipitated the holdings in *Apprendi, Blakely,*
[**22] or *Booker,* which involved judge-imposed sen-
tences *above* the sentences that were authorized solely by
a jury verdict or the facts admitted by the defendant.
Thus, even assuming that Burgess's counsel was in a
position to argue about the potential unconstitutional
application of the Sentencing Guidelines, that argument
had no application (and therefore no merit) in Burgess's
case.

Burgess seeks resentencing under the remedial hold-
ing in *Booker,* which renders the Guidelines advisory
even in cases where the defendant's sentence raises no
constitutional concerns -- *i.e.,* where the defendant is
sentenced under a mandatory Guidelines scheme, but the
actual sentence imposed falls at or below the range au-
thorized solely by the admitted or jury-deliberated facts.
Even assuming, *arguendo,* that Burgess's counsel rea-
sonably should have foreseen *Booker's* remedial holding,
that holding does not clearly compel any relief for Bur-
gess. Although the Court in *Booker* stated that its holding
would apply to all cases on direct review, such as Bur-
gess's, the Court further observed that not every appeal
of a sentence under a mandatory Guidelines regime
would lead to a new sentencing [**23] hearing. *Booker,
125 S. Ct. at 769.*

It is only by virtue of this Court's interpretation of
*Booker in United States v. Barnett, 398 F.3d 516 (6th
Cir. 2005),* that [*241] Burgess might be entitled to
resentencing, were it not for his waiver of his right to
appeal his sentence. In *Barnett,* this Court established a
presumption that any pre-*Booker* sentencing determina-
tion constitutes plain error because the Guidelines were
then mandatory. *Barnett, 398 F.3d at 526-29.* Conse-
quently, a defendant must be re-sentenced unless the
sentencing record contains clear and specific evidence to
the effect that, even if the sentencing court had known
the Guidelines were advisory, it would have sentenced
the defendant to the same (or a longer) term of impris-
onment. *Id.* The novelty of a *Barnett*-type argument at
the time of Burgess's sentencing in September 2003 not
only countenances against a finding of ineffective advo-
cacy, but also militates against any finding of prejudice
stemming from counsel's failure to raise the argument.
Burgess's attorney would have had to have convinced
the district court that Burgess should be sentenced as if
the [**24] Guidelines were advisory, even though there was
no apparent threat to Burgess's *Sixth Amendment* rights.
There was no reasonable probability, however, that the
court would have accepted such an argument that no
other court had adopted at that time. *See Williams v. Tay-*

*lor, 529 U.S. 362, 391, 146 L. Ed. 2d 389, 120 S. Ct.
1495 (2000)*("To establish prejudice he 'must show that
there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would
have been different.'")(quoting *Strickland v. Washington,
466 U.S. 668, 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052
(1984)).* n1

n1 Arguably, Burgess's counsel could have at
least preserved the argument for appeal by nego-
tiating an exception to the waiver of appellate
rights provision of the plea agreement for any
claim concerning the validity of the Guidelines.
Such a provision might have allowed Burgess to
seek a remand under this Circuit's *Barnett* rule.
But the extreme prescience required in September
2003 to predict the outcome in *Barnett* conclu-
sively demonstrates that Burgess's attorney did
not act unreasonably in failing to negotiate such a
provision.

[**25]

In the end, the merits of Burgess's ineffective assis-
tance of counsel claim hinges on showing that his coun-
sel acted unreasonably in failing to predict two Supreme
Court decisions (*Blakely* and *Booker*) and a subsequent
decision from this Circuit (*Barnett*). n2 As a matter of
law, there simply is no basis for Burgess's assertion that
his counsel's failure to predict this novel line of authority
"fell below an objective standard of reasonableness."
*Strickland, 466 U.S. at 687-88; see also Jones v. Barnes,
463 U.S. 745, 751, 77 L. Ed. 2d 987, 103 S. Ct. 3308 -54
(1983)*(holding that counsel has no obligation to raise
every possible claim); *Fuller v. United States, 398 F.3d
644, 651 n.4 (7th Cir. 2005)*(noting in dictum that any
argument that trial counsel was ineffective for failing to
anticipate *Blakely* and *Booker* would not be tenable). We
therefore reject Burgess's claim of constitutionally inef-
fective counsel.

n2 Under Burgess's theory, Counsel also
would have had to have anticipated that this Cir-
cuit's future *en banc* decision in *United States v.
Koch, 383 F.3d 436 (6th Cir. 2004),* which up-
held the mandatory nature of the Sentencing
Guidelines after the decision in *Blakely,* would
eventually be overruled by *Booker.*

[**26]

III

For all the foregoing reasons, we **DISMISS** Bur-
gess's appeal.