UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN S. GRABER,                ) 4:04CV1314
                               )
        Petitioner             ) JUDGE JOHN M. MANOS
                               ) (Magistrate Judge Kenneth S. McHargh)
        v.                     )
                               )
DAVID BOBBY,                   )
        Warden,                )
                               )
        Respondent             ) REPORT AND RECOMMENDED
                               ) DECISION OF MAGISTRATE JUDGE


McHARGH, MAG. J.

        The petitioner John S. Graber ("Graber") has filed a petition pro se for a writ of

habeas corpus regarding his 2001 conviction for rape and gross sexual imposition in

the Stark County, Ohio, Court of Common Pleas.  The named respondent is David

Bobby ("Bobby"), Warden of Trumbull Correctional Institution.  The petition is

based on eight grounds, specifically:

        1.  Petitioner was denied due process of law and a fair trial as
        guaranteed by and through the Fifth, Sixth and Fourteenth
        Amendments of the U.S. Constitution and Article I, Section 16 of the
        Ohio Constitution, where the prosecutor violated petitioner's Miranda
        rights and violated the Code of Professional Responsibility, DR 7-
        106(C)(2)(3) and (4), wherein the prosecutor;

                (A) violated petitioner's Miranda rights, by eliciting
                prejudicial testimony from Detective Armstrong that
                petitioner refused to talk to him, thereby implying guilt by
                silence, and reiterating this prejudicial testimony in
                closing arguments.

(B) prejudiced the jury with repeated and inflaming remarks which contain no probative evidence.

(C) infringed upon the role of the jury by questioning every defense witness as to the veracity of the complaining witnesses.

(D) infringed upon the role of the jury by repeatedly vouching as to the veracity of the complaining witnesses.

2. Petitioner was denied due process of law and a fair trial as guaranteed by and through the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, where the trial court erroneously permitted prejudicial hearsay testimony.

3. Petitioner was denied due process of law and a fair trial as guaranteed by and through the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, where the trial court erroneously admitted the medical records of Jessica and David Graber, which included unredacted highly prejudicial hearsay statements.

4. Petitioner was denied due process of law and a fair trial as guaranteed by and through the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, when the trial court erred by refusing to admit evidence of prior false allegations.

5. Petitioner was denied effective assistance of counsel as guaranteed by and through the Sixth and Fourteenth Amendments of the U.S. Constitution and Article One, Section Ten of the Ohio Constitution, when trial counsel repeatedly failed to make timely objections to prejudicial statements and testimony.

6. Petitioner was denied due process of law and a fair trial as guaranteed by and through the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and Article one, Section's Ten and Sixteen of the Ohio Constitution, by the cumulative effect of Ground One through Ground Six.

7. Defendant/petitioner was deprived of his "notice and jury trial rights" as guaranteed by and through the Sixth Amendment where his

sentence is not only contrary to law, O.R.C. § 2953.08, but is violative of the <u>Apprendi</u> - rule where such enhanced penalty was/is *predicated on the assessment of facts which were not charged *in the indictment, submitted to a jury, or proven beyond a reasonable doubt.

8.  Petitioner was denied effective assistance of appellate counsel as guaranteed by and through the Sixth and Fourteenth Amendments of the U.S. Constitution and Article One, Section Ten of the Ohio Constitution where appellate counsel failed to follow the Rules of Appellate Procedure 12 and 16.

(Doc. 1, §§ 12.A.-12.H.)

Respondent argues that all claims but the seventh are barred by procedural default.  (Doc. 10, at 2.)  Respondent contends that the <u>Apprendi</u> claim is without merit.  <u>Id.</u> at 22-25.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

On August 30, 2001, the Stark County Grand Jury indicted appellant with two counts of rape, in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree, and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), felonies of the third degree. At his October 19, 2001 arraignment, appellant plead not guilty to the charges.

Appellant married Melanie Graber in 1992. Together they had two children, Jessica, born June 4, 1992, and David, born May 19, 1994. In December 1996, appellant and Melanie legally dissolved their marriage and appellant was designated the residential parent. Appellant remained the residential parent until July 1999, when Melanie obtained custody of the children.

 In May, 1999, approximately ten months after Melanie obtained custody of the children, David spontaneously revealed that his father had sexually abused him to Stacy Newman, his baby-sitter. Stacy had just turned thirteen years old, and babysat the children on occasion. David's revelation so shocked Stacy she did not immediately tell

Melanie Graber. However, one week later, Stacy told Melanie what David had said.

Melanie immediately contacted the police. Canton Police Detective James Armstrong met with Melanie Graber on May 9, 2000, along with Diana Ivan, a case worker from the Department of Human Services. Ms. Ivan interviewed the children and made arrangements for the children to be examined at the Akron Children's Hospital CARE Center. Detective Armstrong also contacted appellant, but appellant chose not to speak to him.

At the CARE Center, nurse-practitioner Donna Abbott, and social worker, Sherry Roberts, interviewed Melanie without the children present. Ms. Roberts took each child to a private interview room to obtain a physical history from each child.

At the time of the Jessica's interview, she was seven years old and in the second grade. Ms. Roberts noted she acted reluctant and embarrassed. Jessica knew she was there to discuss what her father had done, but she was unable to say the words. Instead, Jessica asked if she could write the words. Jessica wrote that her father "got on top" of her and "was wiggling" and that "he made [her] take [her] clothes off." Then Jessica began verbally engaging in conversation with Ms. Roberts.

When Jessica was unable to say certain words, such as "peepee" she would write the word on the paper or point to the words that had been written. Jessica told the social worker her father had performed oral sex on her, and that she had been made to perform oral sex on him. Jessica also explained her father had manually and genitally stimulated her genital area. Further, Jessica indicated her father used "red stuff" to rub on her genital area to make it hurt less. She further explained appellant "peed" white stuff on her stomach.

Jessica told Ms. Roberts this abuse occurred every time she and David slept with appellant in his bed. She indicated these events happened at night with the exception of one occasion, and she further indicated she and her brother did not sleep with appellant that often. Jessica explained that David was asleep when her father would behave in this fashion toward her.

Ms. Roberts also attempted to talk to David. However, David explained he could not discuss the situation. Ms. Roberts ended the interview.

Donna Abbott performed a physical exam and noted no physical findings of abuse to either Jessica or David. Ms. Abbott also testified the lack of physical findings was consistent with the type of abuse reported.

Prior to trial, on December 5, 2001, the trial court conducted an in-camera voir dire of David and Jessica to determine their competency to testify at trial. After talking to both children, the trial court found each child competent to testify.

At the same hearing, the trial court also discussed a pretrial issue raised by the parties. In 1995, Jessica told her grandmother appellant had sexually abused her. DHS became involved in the investigation and conducted an interview with all interested parties, and conducted a physical examination of Jessica. After the investigation, DHS concluded the allegations were "unsubstantiated." Therefore, no criminal charges were pursued. December 5, 2001 Hearing Transcript at 48-49.

Appellant wanted to cross-examine Melanie Graber on this issue arguing the allegations of sexual misconduct in 1995, impugned Melanie's credibility because they were "unsubstantiated." Tr. at 50. After reviewing case law submitted by the parties, the trial court determined the incident was collateral. The trial court explained if it could be demonstrated the victim of abuse had lied, the victim would be subject to cross-examination pursuant to Evid. R. 608(B). However, because the prior allegations had been found to be merely unsubstantiated (as opposed to being established as false), the trial court found the rape shield law applied to prevent further interrogation.

Defense counsel clearly indicated it had no intention of cross-examining the child. Rather, appellant sought only to advance the theory Melanie and her mother were involved in a plan or scheme to bring about the current charges against his client. Tr. at 53. The trial court indicated it would not permit appellant to attack Melanie's credibility at trial with the 1995 allegations. Apparently Jessica's physical examination had revealed irritation in the vaginal area, no recantation by the child, and no evidence indicating anyone had lied about anything. Accordingly, the trial court excluded the introduction of such evidence. The matter proceeded to trial on December 6, 2001. To the extent the testimony of the witnesses at trial becomes necessary, it will be addressed in the specific assignments of error herein.

After hearing all of the evidence, the jury found appellant guilty on all charges. The trial court conducted a sentencing hearing on December

10, 2001. In a December 13, 2001 Judgment Entry, the trial court
sentenced appellant to serve ten years for each rape count and five
years for each gross sexual imposition count. Further, the trial court
ordered the rape charges be served consecutively, and the gross sexual
imposition charges be served concurrently to each other and the rape
charges.

(Doc. 10, RX 18, at 2-x; <u>State v. Graber</u>, No. 2002CA00014, 2003 WL 124283, at *1-

*3 (Ohio Ct. App.  Jan. 13, 2003)).

Graber, through his appellate counsel, raised eight assignments of error on his

direct appeal:

1.  The trial court erred by allowing a social worker to testify as to
statements made to her by Jessica Graber that she was a victim of rape
and gross sexual imposition by John Graber in violation of John
Graber's right to due process guaranteed by the Fourteenth
Amendment to the U.S. Constitution pursuant to Ohio Rules of
Evidence 803.4 and/or 801(d)(1)(c).

2.  The court erred in finding David Graber competent to testify at trial.

3.  Defendant's due process rights were violated when the prosecution
submitted evidence of the defendant's invocation of his right to silence
and emphasized that invocation in closing argument.  This violated
defendant's rights as guaranteed by the Fifth, Sixth and Fourteenth
Amendments under the United States Constitution.

4.  The court erred in denying the defendant's request to introduce
evidence that in 1995 Melanie Graber made allegations that John
Graber had sexually molested Jessica Graber. This ruling denied the
defendant fundamental due process.

5.  The defendant's trial counsel was totally inadequate and was so
deficient that it constituted ineffective assistance of counsel and
violated John Graber's Sixth Amendment right to assistance of counsel
at trial.

6.  The court erred in admitting the medical records of Jessica Graber
and David Graber that included unredacted hearsay testimony and

irrelevant prejudicial statements in violation of Evidence Rule 807 and John Graber's constitutional right to a fair trial.

7.  The cumulative effect of Assignments of Error Nos. I through 6, result in the denial of the defendant's Sixth Amendment right to a fair trial and constitute a denial of his right to substantive due process in violation of the defendant's Fourteenth Amendment rights.

8.  The court erred in imposing a maximum consecutive sentence on the rape charges where none of the factors listed in 2929.14(c) apply and in imposing consecutive sentences is contrary to law under R.C. 2929.14(e)(4).

(Doc. 10, RX 15.)  On Jan. 13, 2003, the Ohio Court of Appeals affirmed Graber's convictions, but reversed in part, finding that the trial court had failed to make the statutory findings necessary to impose consecutive sentences.  (Doc. 10, RX 18; State v. Graber, No. 2002CA00014, 2003 WL 124283 (Ohio Ct. App. Jan. 13, 2003)).

On remand, the trial court held a sentencing hearing.  At the February 2003 hearing, the trial court re-imposed the original sentence adding the required findings in support of the imposition of consecutive sentences.  (Doc. 10, RX 31.) Graber appealed that determination, raising a single assignment of error:

Whether defendant/appellant was deprived of his "notice and jury trial rights" as guaranteed by and through the Sixth Amendment where his sentence is not only contrary to law, O.R.C. § 2953.08, but is violative of the Apprendi-rule where such enhanced penalty was/is *predicated on the assessment of facts which were not charged *in the indictment, submitted to a jury, or proven beyond a reasonable doubt.

(Doc. 10, RX 34.)  The court of appeals affirmed, finding that the sentence did not violate Apprendi because Graber was sentenced within the statutorily prescribed range for the offenses.  (Doc. 10, RX 37; State v. Graber, No. 2003CA00110, 2003 WL 22299944 (Ohio Ct. App. Oct. 3, 2003)).

On Nov. 12, 2003, Graber filed two appeals with the Ohio Supreme Court.  He

moved for leave to file a delayed appeal of his direct appeal, arguing that, "through

no fault of [his] own, [he] was precluded from appealing Case No.  2002CA00014 to

this Court until now because the case was on remand to the trial court."  (Doc. 10, RX

21, at 2.)  On March 3, 2004, the Ohio Supreme Court denied his motion for delayed

appeal.  (Doc. 10, RX 22; State v. Graber, 101 Ohio St.3d 1466, 804 N.E.2d 40 (2004).)

Further pursuing his direct appeal, Graber filed a petition for a writ of certiorari in

the U.S. Supreme Court on Aug. 19, 2004; however, the Supreme Court denied

certiorari.  See generally State v. Graber, No. 2002CA00014, 2003 WL 124283 (Ohio

Ct. App. Jan. 13, 2003), cert. denied, 125 S.Ct. 868 (2005).

Graber also appealed the court of appeals affirmation of his re-sentencing.

(Doc. 10, RX 38.)  On March 3, 2004, the Ohio Supreme Court denied Graber leave to

appeal and dismissed the appeal as not involving any substantial constitutional

question.  (Doc. 10, RX 40; State v. Graber, 101 Ohio St.3d 1467, 804 N.E.2d 819

(2004)).

On Feb. 20, 2004, while his dual appeals to the state high court were pending,

Graber moved, under Ohio App.R. 26(B), to re-open his original appeal on the

grounds that appellate counsel was ineffective.  Graber presented the following

assignment of error:

> 1.  Whether defendant/ appellant was denied due process of law and a
> fair trial as guaranteed by and through the Fifth and Fourteenth
> Amendments of the U.S. Constitution and Article I, Section 16 of the
> Ohio Constitution, where the prosecutor violated the Code of

Professional Responsibility, DR 7-106(C)(2)(3) and (4), where the prosecutor;

> (A) prejudiced the jury with repeated and inflaming remarks which contain no probative value.

> (B) infringed upon the role of the jury by questioning every defense witness as to the veracity of the complaining witnesses.

> (C) infringed upon the role of the jury by repeatedly vouching as to the veracity of the complaining witnesses.

(Doc. 10, RX 23.)

The court of appeals denied his application for re-opening on March 15, 2004, finding that he had failed to show good cause for the untimely filing of his application.  (Doc. 10, RX 25.)

On April 16, 2004, Graber again appealed to the Ohio Supreme Court, raising the following three propositions of law:

> 1.  Defendant/ appellant was denied effective assistance of appellate counsel as guaranteed by and through the Sixth and Fourteenth Amendments of the U.S. Constitution and Article One, Section Ten of the Ohio Constitution where appellate counsel failed to follow the Rules of Appellate Procedure 12 and 16.

> 2.  In contravention of the guarantees of the Sixth and Fourteenth Amendments of the U.S. Constitution and Article One, Section Ten of the Ohio Constitution, the Court of Appeals, Fifth Appellate District, erred by denying defendants'/ appellants' application for reopening pursuant to Appellate Rule 26(B), for exceeding the ninety (90) day time limit, where defendant/ appellant has shown good cause.

> 3.  Defendant/ appellant was denied due process of law and a fair trial as guaranteed by and through the Fifth and Fourteenth  Amendments of the U.S. Constitution and Article One, Section Sixteen of the Ohio Constitution, where the prosecutor violated the Code of Professional Responsibility, DR 7-106(C)(2)(3) and (4), where the prosecutor;

(A) prejudiced the jury with repeated and inflaming remarks which contain no probative value.

(B) infringed upon the role of the jury by questioning every defense witness as to the veracity of the complaining witnesses.

(C) infringed upon the role of the jury by repeatedly vouching as to the veracity of the complaining witnesses.

(Doc. 10, RX 27.)  On June 23, 2004, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Doc. 10, RX 29; State v. Graber, 102 Ohio St.3d 1485, 810 N.E.2d 968 (2004)).

Graber filed this petition for a writ of habeas corpus on July 13, 2004.  (Doc. 1.) After having filed his petition for federal habeas relief, Graber subsequently filed a petition for post-conviction relief in the trial court, pursuant to Ohio Rev. Code § 2953.21, on July 27, 2004.  (Doc. 10, RX 41.)  The trial court denied the petition as untimely on Oct. 22, 2004, and that decision was upheld on appeal.  State v. Graber, No. 2004CA00344, 2005 WL 1163920 (Ohio Ct. App. May 16, 2005).

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in <u>Williams v. Taylor</u>, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2) "involved
> an unreasonable application of ... clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the
> "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court
> may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies
> that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2002).  <u>See also</u> <u>Lorraine v. Coyle</u>, 291 F.3d

416, 421-422 (6th Cir. 2002), <u>cert. denied</u>, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases."  <u>Williams</u>, 529 U.S. at 405.  <u>See also</u> <u>Price v.

Vincent</u>, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court

considers the state decision to be erroneous or incorrect.  Rather, the federal court

must determine that the state court decision is an objectively unreasonable

application of federal law.  <u>Williams</u>, 529 U.S. at 410-12; <u>Lorraine</u>, 291 F.3d at 422.

Graber has filed his petition pro se.  The pleadings of a petition drafted by a

pro se litigant are held to less stringent standards than formal pleadings drafted by

lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir.

2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519

(1972) (per curiam)).  Other than that, no special treatment is afforded litigants who

decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict

adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir.

1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

Several of the grounds put forward by Graber allege violations of the Ohio

Constitution.  The question before this federal habeas court is whether the state

court decision was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States.

Federal habeas relief is not available for a claimed violation of state law, thus any

alleged violation of the Ohio Constitution is not properly before this court.  See Lewis

v. Jeffers, 497 U.S. 764, 780 (1990).


## III.  PROCEDURAL DEFAULT

The respondent argues that Graber has procedurally defaulted seven of his

claims, because these claims were not presented in a timely appeal to the Ohio

Supreme Court.  (Doc. 10, at 15-22.)  The respondent points out that the first six

grounds for the petition were asserted as assignments of error in Graber's

unsuccessful direct appeal.  (Doc. 10, at 15.)

The first ground of the petition, prosecutorial misconduct and Miranda,

corresponds to the third assignment of error in his direct appeal.  (Compare doc. 1, §

12.A. with doc. 10, RX 15, at 14-27.)   The second ground of the petition, regarding

hearsay testimony, was the first assignment of error in his direct appeal.  (Compare

doc. 1, § 12.B. with doc. 10, RX 15, at 6-10.)  The third ground, also regarding hearsay

testimony, was the sixth assignment of error in his appeal.  (Compare doc. 1, § 12.C.

with doc. 10, RX 15, at 36-38.)

        The fourth ground of the petition, concerning the admissibility of prior

allegedly false allegations, corresponds to the fourth assignment of error in his direct

appeal.  (Compare doc. 1, § 12.D. with doc. 10, RX 15, at 28-30.)  The fifth ground,

regarding ineffective assistance of trial counsel, was the fifth assignment of error in

his appeal.  (Compare doc. 1, § 12.E. with doc. 10, RX 15, at 31-35.)   The sixth

ground, alleging a substantive due process violation, was the seventh assignment of

error in his appeal.  (Compare doc. 1, § 12.F. with doc. 10, RX 15, at 39.)

        Although Graber attempted to file a delayed appeal concerning his first six

grounds, the state high court denied leave to appeal, without reaching the merits of

his claim.  (Doc. 10; RX 22.)  As to the eighth ground (ineffective assistance of

appellate counsel), the court of appeals denied his untimely application for re-

opening.  (Doc. 10, RX 25.)

        A habeas petitioner cannot obtain relief unless he has completely exhausted

his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell

v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d

533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  The exhaustion requirement is

satisfied when the highest court in the state has been given a full and fair

opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir.

1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner

cannot circumvent the exhaustion requirement by failing to comply with state

procedural rules.  Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because

the prisoner failed to meet a state procedural requirement, the state judgment rests

on independent and adequate state procedural grounds, barring federal habeas

relief.  Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977);

Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000).  Thus, where a state

prisoner has procedurally defaulted his federal claims in state court, habeas review

of those claims is barred "unless the prisoner can demonstrate cause for the default

and actual prejudice as a result of the alleged violation of federal law, or demonstrate

that failure to consider the claims will result in a fundamental miscarriage of

justice."  Buell, 274 F.3d at 348 (quoting Coleman, 501 U.S. at 750).

The court considers four factors to determine whether a claim has been

procedurally defaulted:  (1) the court must determine whether there is a state

procedural rule that is applicable to the petitioner's claim, and whether the

petitioner failed to comply with the rule; (2) the court must decide whether the state

courts actually enforced the procedural sanction; (3) the court must decide whether

the state procedural forfeiture is an adequate and independent state ground on

which the state can rely to foreclose review of the federal claim; and, (4) the petitioner

must demonstrate that there was cause for him not to follow the procedural rule, and

that he was actually prejudiced by the alleged constitutional error.  Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

The Ohio Supreme Court's denial of a motion for leave to file a delayed appeal is a procedural ruling sufficient to bar habeas review.  Bonilla v. Hurley, 370 F.3d 494, 497 (6th Cir. 2004) (per curiam), cert. denied, 125 S.Ct. 506 (2004); Scurlock v. Hurley, No. 2:04-CV-687, 2005 WL 1189831, at *4 (S.D. Ohio May 19, 2005); Smith v. Ohio, Dept. of Rehab. and Corr., 331 F.Supp.2d 605, 619 (N.D. Ohio 2004).  Such a procedural default is "an adequate and independent ground on which the state can rely to foreclose review of his federal constitutional claims."  Shabazz v. Ohio, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (TABLE, text in WESTLAW).

Similarly, concerning the eighth claim of the petition, Rule 26(B)'s 90-day filing period is a state procedural rule applicable to the Graber's claim, and Graber failed to comply with the timely-filing provision.  The state court  enforced the procedural sanction by denying his application for reopening.  The Sixth Circuit has found that the "good cause" requirement in Rule 26(B) is an adequate state procedural ground.  Monzo v. Edwards, 281 F.3d 568, 578 (6th Cir. 2002); Smith, 331 F.Supp.2d at 621-622.  See generally Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted).

## A.  Cause for Failure to Follow Procedural Rules

Finally, Graber has failed to demonstrate that there was cause for his failure to follow the procedural rule.  To establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with the state's procedural rules.  Coleman, 501 U.S. at 753; Bonilla, 370 F.3d at 498 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

As to his direct appeal, Graber contends that he was confused about how to proceed because his first appeal resulted in a partial remand (as to sentencing).  (Doc. 17, at 5.)  In his affidavit in support of his delayed appeal, Graber had argued that he was "precluded" from appealing because the case was on remand to the trial court.  (Doc. 10, RX 21, at 2, ¶ 4.)  However, this appeal concerned his conviction, not his sentencing (which was the issue remanded).  Id. at 2, ¶ 3.  The forty-five day period within which to appeal to the Ohio Supreme Court begins on the date that the court of appeals filed its judgment entry, S. Ct. Prac. R. II., § 2(A)(1)(a), which took place in this instance on the same date that the opinion issued, see doc. 10, RX 8, at 2 ( ct. app. docket).

Graber believes that such an appeal is barred by Morgan v. Eads, 104 Ohio St.3d 142, 818 N.E.2d 1157 (2004).[1]  (Doc. 17, at 6.)  For example, Graber quotes: "If a case is pending on appeal in this court, an Ohio court of appeals has no jurisdiction

---

[1]Morgan held that proceedings under Rule 26(B) are collateral post-conviction proceedings, and not part of the direct appeal process.  Morgan, 104 Ohio St.3d at 142, 818 N.E.2d at 1157 (syllabus).

to alter or amend the judgment it previously rendered." <u>Morgan</u>, 104 Ohio St.3d at

144, 818 N.E.2d at 1159.  In this case, then, the judgment of conviction had been

affirmed by the court of appeals, and an appeal to the Ohio Supreme Court would

divest the appellate court of jurisdiction to alter or amend the judgment of

conviction.  But it would not bar the trial court from re-sentencing in accordance with

the appellate court's guidance.  The holding of <u>Morgan</u> cannot be read to bar an

appeal of an affirmed judgment of conviction, whatever the status of the sentence.

In any event, Graber's misconception of the rules is not an "external" factor.

<u>Coleman</u>, 501 U.S. at 753 (ignorance or inadvertence not "cause"); <u>Bonilla</u>, 370 F.3d

at 498 (pro se petitioner's ignorance of law and procedural requirements for filing

timely appeal insufficient to establish cause).

As to his Rule 26(B) motion for reopening, Graber asserts that "[s]imply

because the Court of Appeals rejected Petitioner's showing of good cause, does not

mean it suddenly becomes a procedural bar."  (Doc. 17, at 8.)  However, the Sixth

Circuit has ruled otherwise.  See <u>Monzo</u>, 281 F.3d at 578; <u>Smith</u>, 331 F.Supp.2d at

621-622.  The court of appeals found that he had failed to show good cause for the

untimely filing of his application.  (Doc. 10, RX 25.)

Graber had argued that his application to reopen was excusably late because

he was proceeding pro se, and his access to the prison law library was restricted.[2]

---

[2]Graber complained several times of being unable to access the prison library
in October and November 2003, well after the deadline for his Rule 26(B) motion had
passed.  <u>See</u> doc. 10, RX 23b, at 6-17 (exh. M).  Although he contends that other
inmates had problems with the library earlier, he does not provide any evidence that

(Doc. 10, RX 23, at 3-5.)  Respondent points out that Graber's application exceeded the 90-day limit by almost a year.  (Doc. 10, at 20.)  During that same period (Jan. 13, 2003, to Feb. 20, 2004), Graber managed to file an appeal of his sentencing  (RX 34), on May 12, 2003, which he appealed to the state supreme court (RX 38), along with his motion for leave to file a delayed (direct) appeal  (RX 21) on Nov 12, 2003.

Because Graber has not shown cause, it is unnecessary to consider whether he was prejudiced by the default.  <u>Murray</u>, 477 U.S. at 494; <u>Shabazz</u>, 1998 WL 384559, at *1.  Nor has Graber demonstrated that the claimed constitutional errors led to a "fundamental miscarriage of justice," that is, "the conviction of one who is actually innocent."  <u>Coleman</u>, 501 U.S. at 748; <u>Murray</u>, 477 U.S. at 496.

The petition should be denied as to grounds one through six, and ground eight, because Graber has procedurally defaulted his claims.


## IV.  APPRENDI VIOLATION

The remaining ground of the petition is based on an alleged violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), specifically:

> 7.  Defendant/petitioner was deprived of his "notice and jury trial rights" as guaranteed by and through the Sixth Amendment where his sentence is not only contrary to law, O.R.C. § 2953.08, but is violative of the <u>Apprendi</u> - rule where such enhanced penalty was/is *predicated on the assessment of facts which were not charged *in the indictment, submitted to a jury, or proven beyond a reasonable doubt.

---

he himself had problems earlier than October 2003.

(Doc. 1, at § 12.)  As mentioned earlier, habeas relief is not available for a claimed

violation of state law, thus any alleged violation of the Ohio Revised Code is not

properly before this court.  <u>Lewis</u>, 497 U.S. at 780.

   The Supreme Court in <u>Apprendi</u> held that, "[o]ther than the fact of a prior

conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt."  <u>Apprendi</u>, 530 U.S. at 490.  <u>See also</u> <u>Blakely v. Washington</u>, 542 U.S. 296

(2004).  The Court distinguished between a "sentencing factor" and a "sentence

enhancement."  A sentencing factor "describes a circumstance, which may be either

aggravating or mitigating in character, that supports a specific sentence *within the*

*range* authorized by the jury's finding that the defendant is guilty of a particular

offense."  <u>Id.</u> at 494 n.19.  The term "sentence enhancement" is "the functional

equivalent of an element of a greater offense than the one covered by the jury's

guilty verdict" because it concerns "an increase beyond the maximum authorized

statutory sentence."  <u>Id.</u>  <u>Apprendi</u> invalidated the sentence enhancement provision

of the New Jersey statute at issue.

   Graber challenges his sentence under Ohio Rev. Code § 2929.14(B), as a

violation of the constitutional principles outlined in <u>Apprendi</u>.[3]  Graber was

_____

   [3]As part of his <u>Apprendi</u> claim, Graber also contends that his classification as a sexual predator pursuant to Ohio Rev. Code § 2950.09 is unconstitutional.  (Doc. 1, § 12.G., at xii-xiii; doc. 17, at 29-31.)  Graber characterizes this classification as a "sentencing enhancement," doc. 17, at 29, although it is not apparent that the classification affected his sentence in any way.  <u>See</u> doc. 10, RX 4 & RX 5.  In any event, this claim was not presented to the state courts, and is thus procedurally

convicted of a first degree felony, which implicates the following sections of the

Revised Code:

> (A) . . . if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
>
> > (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.
>
> (B) . . . if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
>
> > (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
> >
> > (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

Ohio Rev. Code § 2929.14.  The trial court sentenced Graber to serve ten years for

each (first degree) rape count.  Graber contends that, as a first time offender, the

court was required to sentence him to the shortest prison term (i.e., three years), and

that the additional findings under Ohio Rev. Code § 2929.14(B)(2) constitute an

impermissible factual finding in violation of Apprendi.

     Apparently, the Sixth Circuit has not had occasion to rule on this issue.  The

---

defaulted.  See generally doc. 10, RX 15, at 40-42.

Ohio state courts have addressed the <u>Apprendi</u> issue (and the subsequent related decision of <u>Blakely v. Washington</u>), but have not ruled  consistently.

The Eighth District Court of Appeals stated:  "There is conflicting authority on this issue; however, a majority of Ohio courts deciding this issue have found <u>Blakely</u> inapplicable."  <u>State v. Le</u>, No. 84429, 2005 WL 488378, at *4 (Ohio Ct. App. Mar. 3, 2005) (citing cases).  <u>See also</u> <u>State v. Combs</u>, No. CA2000-03-047, 2005 WL 941133, at *9 n.1 (Ohio Ct. App. Apr. 25, 2005) (citing cases).  The court noted that, although <u>Blakely</u> requires that a jury must determine "any fact" that increases the sentence over "the prescribed statutory maximum," the minimum sentence as outlined in § 2929.14(B) is not a "statutory maximum."  <u>Id.</u> at *5.  Therefore, "a trial court's imposition of maximum sentences for a defendant who has not previously served a prison term does not implicate <u>Blakely</u> where the sentence imposed was within the range authorized by state law."  <u>Id.</u>

The First District, in <u>State v. Montgomery</u>, recognized that its earlier decisions had found <u>Blakely</u> did not affect the sentencing scheme at issue.  <u>State v. Montgomery</u>, 159 Ohio App.3d 752, 825 N.E.2d 250 (Ohio Ct. App. 2005).  However, after the U.S. Supreme Court ruled in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the <u>Montgomery</u> court reconsidered the issue, and reversed course:

> Under R.C. 2929.14(B), the only prison term a sentencing court can impose on an offender who has not previously served a prison term, without making additional findings, is the minimum prison term allowed by law for the offense.  Thus, we hold that the statutory maximum for an offender who has not previously served a prison term is the minimum prison term allowed by law for the offense.

Montgomery, 159 Ohio App.3d at 756-757, 825 N.E.2d at 253.  The court reasoned

that the trial court did not have authority to impose a longer sentence unless it made

additional findings under § 2929.14(B)(2).  Id. at 757, 825 N.E.2d at 253.  Although

historically those findings had been considered "sentencing factors," the court stated

that the findings should be considered "facts," "because they affect the level of

punishment an offender will receive."  Id.

      In State v. Combs, the Twelfth District came to the opposite conclusion after

considering the Supreme Court's decisions in Blakely and Booker.  According to the

Combs court, those decisions now make it "clear that the imposition of the maximum

sentence pursuant to R.C. 2929.14 is not unconstitutional."  Combs, 2005 WL

941133, at *6.  The court noted that:

> . . . the provisions in R.C. 2929.14(B) limit the sentence a court may
> impose to the statutory range provided in R.C. 2929.14(A), and
> requir[e] the court to impose an appropriate sentence in light of the
> offender's real conduct. R.C. 2929.14(B) is not mandatory, but advisory,
> and does not permit a sentencing court to impose any sentence beyond
> that which is permitted by R.C. 2929.14(A).

Id. at *9.  Under Ohio's sentencing scheme, when a jury convicts a defendant of a

felony, the jury verdict reflects factual findings authorizing the sentencing court to

impose an appropriate sentence from within the range set forth in Ohio Rev. Code §

2929.14(A).  Id. at *10.  According to the Combs court, the findings under §

2929.14(B) "merely assist the court in determining the appropriate sentence" from

within that range.  Id.  In other words, the "statutory maximum" lies in § 2929.14(A)

rather than § 2929.14(B).  Id. at *9.

This court finds the logic of <u>Combs</u> (and <u>Le</u>) the more convincing.  The Supreme Court in <u>Booker</u> reaffirmed the holding of <u>Apprendi</u>, which the Court characterized as:  "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  <u>Booker</u>, 125 S.Ct. at 756.  The statutory maximum for a first-degree felony under Ohio Rev. Code § 2929.14 is ten years.   Ohio Rev. Code § 2929.14(A)(1).  Graber was not sentenced to a term which exceeds the statutory maximum.

The factors outlined in Ohio Rev. Code § 2929.14(B)(2) are more akin to the sentencing factors as described in <u>Apprendi</u>, which support  "a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense,"  rather than impermissible "sentence enhancements."  <u>See Apprendi</u>, 530 U.S. at 494 n.19.

The court of appeals found that Graber's sentence did not violate <u>Apprendi</u> because he was sentenced within the statutorily prescribed range for the offenses.  (Doc. 10, RX 37.)  Graber has not demonstrated that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## V.  SUMMARY

The petition for a writ of habeas corpus should be denied.  The petition should be denied as to grounds one through six, and ground eight, because Graber has procedurally defaulted his claims.  As to the seventh ground, Graber has not demonstrated that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

It is recommended that the petition be denied.

Dated:   Aug. 29, 2005                          /s/ Kenneth S. McHargh
                                                Kenneth S. McHargh
                                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).